

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-23-1995

# Miller v Cigna

Precedential or Non-Precedential:

Docket 93-1773

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Miller v Cigna" (1995). *1995 Decisions.* Paper 18.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/18

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 93-1773


WILLIAM J. MILLER,
Appellant

v.

CIGNA CORPORATION;
THE INSURANCE COMPANY OF NORTH AMERICA


On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 92-05751)


Argued March 28, 1994

BEFORE:  STAPLETON, HUTCHINSON and ROTH, Circuit Judges

Reargued in banc October 18, 1994
BEFORE:  SLOVITER, Chief Judge, BECKER, STAPLETON
MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN,
NYGAARD, ALITO, ROTH, LEWIS and McKEE, Circuit Judges

(Opinion Filed:  January 23, l995 )



Stephanie A. Middleton (Argued)
Gregory B. Tobin
CIGNA Corporation
One Liberty Place, 52nd Floor
1650 Market Street
P.O. Box 7716
Philadelphia, PA 19101

Attorneys for Appellees
CIGNA Corporation and
Insurance Company of North America

Alice W. Ballard (Argued)
Lynn Malmgren
Samuel & Ballard
225 South 15th Street
Suite 1700
Philadelphia, PA 19102

Attorneys for Appellant

Robert J. Gregory
Room 7032
Equal Employment Opportunity
1801 L. Street N.W.
Washington, DC  20507

Attorney Amicus Appellant

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal is before the court for rehearing in banc to clarify the proper standard for a jury charge in a pretext case alleging age discrimination.[1]

Defendant Insurance Company of North America ("INA") terminated plaintiff William J. Miller from his job after fifteen

---

[1]. The Equal Employment Opportunity Commission participated on rehearing as amicus curiae.

years of employment.[2]  Miller alleges that he was discriminated against on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34.

At trial, the district judge instructed the jury that it could return a verdict for Miller only if he proved that age was "the sole cause" of INA's decision.  After the jury returned a verdict in INA's favor, Miller appealed, asserting that the district court improperly charged the jury regarding his burden of proof.  We hold that in ADEA cases that do not qualify for a burden shifting charge under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), district courts should instruct the jury that the plaintiff's burden is to prove that age played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process.  Because Miller should not have been required to prove that age was the sole cause of INA's decision, we conclude that he is entitled to a new trial.

---

[2].  The parties have stipulated that INA, a subsidiary of CIGNA Corporation, was the plaintiff's employer at all times relevant to this appeal.

# I.

Miller was hired in 1975 as an assistant to INA's Chief Financial Officer.  In that position, he directed INA's reinsurance operations at the Newark Reinsurance Company, created a financial processing service center, and directed the production of summary financial documents.  After serving as Vice President and Director of INA's Special Risk Facility, Miller was promoted to Senior Vice President, Field Operations.  He created a new organization, managed a $200 million budget, and supervised over 8,000 employees.  At this point in his career, Miller was compensated at pay grade sixty-one and his superior consistently evaluated his performance as exceeding expectations.

After his promotion to Senior Vice President, Miller was asked to join a special team of executives called IMPACT. IMPACT's mission was to identify major strategic issues and market strategies for INA's Property and Casualty Division. Caleb Fowler, Chief Financial Officer of the Property and Casualty Division, and Richard Hoag, then Chief of Human Resources, indicated that they would find Miller a permanent position at the conclusion of the project.  When IMPACT concluded in late 1984, Miller was assigned to a special project on reinsurance collection.

Upon completing the special project on reinsurance collection, Miller was appointed to the position of Senior Vice President, Finance and Administration in the Underwriting

Division.  In this position, Miller managed four departments, handled complaints from agents and regulatory agencies, prepared state filings and annual budgets, and managed a $70 million annual budget.

In late 1988, Miller's supervisor, Jack Morrison, advised Miller that he should search for another job because his position might be eliminated.  In March of 1989, Miller's new superior, Nord Bjorke, informed Miller that his position was eliminated and sent him to Richard Hoag to receive a special assignment reducing real estate costs in the Property and Casualty Division.

One year later, Hoag informed Miller that, despite his success in reducing real estate costs, his position as "real estate czar" was being terminated.  Hoag advised Miller that he could assist Robert O'Neil, head of the Corporate Real Estate Department, with special projects.  In November of 1990, Miller was informed that this position was being eliminated and that he would be terminated at the end of December.  At the time he was terminated, Miller was fifty-eight years old and had been downgraded to pay grade fifty-nine.  At no time during 1990 did company officials apprise Miller of five vacancies at the company for which he might have applied.

The first vacancy was for the position of Vice President, Filing and Regulation.  The company announced that Darrell DeMoss, age forty-two, had been selected.  Miller had not known of the position and contends that he was qualified for it because, as Senior Vice President, Finance and Administration, he

supervised the Filing and Regulation function. INA asserts that Miller was not considered because the position required legal analysis and Richard Franklin, the hiring manager for this position, decided to hire an attorney. Miller notes, however, that his name was not included on the list of nonlawyer candidates who were considered but disqualified, and that the previous Vice President, Filing and Regulation, was not a lawyer.

The second vacancy was in the position of General Manager of CIGNA Reinsurance Company, United Kingdom. Among the desired qualifications were "[w]ork experience with either United Kingdom accounting practices or reinsurance accounting practices and principles." App. at 712. Miller asserts that this position involved the same responsibilities he had when he supervised the Newark Reinsurance Company. James Godorecci, who was in charge of hiring for the position, acknowledged that he wrote the job qualifications with Michael Durkin, age thirty-five, in mind and that he never considered Miller for the position. INA contends that Miller lacked the desired academic credentials, work experience, and knowledge of United Kingdom accounting practices, although Miller testified that when he expressed interest in the position, Godorecci's superior told Miller he was "over qualified." App. at 150.

The third vacancy was for the position of Senior Vice President, Finance Systems and Administration, in the Claims Department. Qualifications desired for the position included: broad knowledge and experience in the property and casualty business; knowledge of financial measures and objectives;

demonstrated credibility and the ability to work with other managers; skill in influencing managers and implementing strategy; and effective verbal and written skills. Miller contends he satisfied these requirements because of his management experience. James Engle, the hiring manager for this position, testified Miller was not qualified because he did not have a strong math and statistical background, was not familiar with loss control and statistical monitors, and lacked credibility among the actuaries. The company asserts that Victor DiFelice, age thirty-eight, was better qualified for the job.

The fourth vacancy, for the position of Head of Strategy Implementation, was filled by Ronald Peters, age forty-nine. The company conceded that Miller was qualified for the job, but maintained that Peters was better qualified. Although it was a temporary assignment, when his work in this position was completed Peters was retained by the company.

The fifth vacancy was for the position of Vice President, Property and Casualty Marketing. Hiring manager Thomas Cobb appointed Cynthia Cole-Dougherty, age thirty-eight. Job qualifications included an ability to conduct market studies, market research, competitive analyses, and segmentation studies. INA asserts that, although Cynthia Cole-Dougherty did not have insurance experience, one of the primary considerations in the hiring decision was a desire to hire from outside both the company and the industry.

The evidence at trial also focused on the nature of INA's hiring and promotion decisionmaking process. Human

resource personnel testified about the company's formal placement process available for positions above pay grade fifty-four ("the 54+ placement process").  A department manager using the 54+ placement process would receive assistance from an assigned human resource contact who would act as the manager's agent within the company, helping to locate, sort through, and evaluate potential candidates for the position.  Open positions above grade fifty-four were not publicly posted and a candidate could only access information about these openings through direct management contact.  The 54+ placement process was not mandatory, however, and many of the managers who testified at trial explained that they had in fact filled their management vacancy through an informal process by assessing their own needs, reflecting on the qualifications of their staff members, and initiating contact with potential candidates directly.  Richard Morrissey, director of human resources for CIGNA's property and casualty companies, also testified about the company's annual organizational review process through which department managers assess the qualifications, potential, and development needs of their staff with an eye toward identifying and developing future high level managers.

During trial, the district judge asked counsel if Miller's was a "pretext" or "mixed motives" case.  This inquiry made reference to the distinction between employment discrimination cases in which the plaintiff seeks to carry his or her burden by showing that the employer's tendered reason for the

challenged action is a pretext for discrimination[3] and cases that qualify for a mixed motives, burden shifting instruction under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  Miller's counsel advised the district court that this was a "pretext" case.  The district judge then "distribute[d] to counsel the questions [to be used] to submit the case to the jury."  App. at 610.  After reviewing those questions, Miller's counsel stated that she had an objection.  Counsel asserted that plaintiff's burden of proof was to establish that age was "a determining factor," i.e., that it "made a difference" in the employer's decision.  App. at 612.

Notwithstanding this objection, the district judge instructed the jury as follows:

> To recover under the pretext theory which the plaintiff asserts in this case, the plaintiff must establish by a preponderance of the evidence that his age was the sole cause of defendants' failure to hire him into vacancies that became available and to terminate his position as a real estate czar in the last of those listings that I've put on the page that you have; that he was qualified and rejected for the positions in question solely because of his age.

* * *

> If the defendants articulate a legitimate non-discriminatory reason for his rejection, the plaintiff at all times retains the ultimate burden of persuading you that the defendant intentionally discriminated against him because of his age.

---

[3].  See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742 (1993).

                         * * *

     The plaintiff under the law must prove
that the discriminatory motive was the <u>sole</u>
<u>cause</u> of the employment action.

     In order to prove pretext, the plaintiff
must show that the defendant's reasons were
false and that discrimination was the real
reason, however, if you disbelieve the
reasons put forth by the defendants to
justify their decision, you may but are not
required to find intentional discrimination.

                         * * *

     The plaintiff doesn't have to prove that
the employer hated him . . . .  He has to
prove that plaintiff's <u>age was the sole</u>
<u>determinative factor</u> in the particular
employment decision.

App. at 673-77 (emphasis added).  At the conclusion of the

charge, Miller's counsel renewed her "objection to . . . the

verdict sheet. . . [and stated that] the question before [the

jury was] whether age was <u>a determinative factor</u> according to

[<u>Hazen Paper Co. v. Biggins</u>, 113 S. Ct. 1701 (1993)]."  App. at

683 (emphasis added).  The district court declined to alter the

charge.

     During its deliberations, the jury sent the following

message to the district judge:
          The jury requests clarification on the
          meaning of defendants' employment decisions
          in question # 2.

          Is the question which we are addressing
          (regarding discrimination based solely on the
          plaintiff's age) focused on: a. Mr. Miller
          not being actively considered -- on the
          candidate slate, or b. Mr. Miller not being
          selected as the person to get the job, for
          each of the jobs "a" through "e"?

App. at 691.  In responding to this inquiry, the district judge twice described the issues before the jury in terms of whether the relevant decision of INA had been "based solely on Mr. Miller's age."  App. at 691-92 (emphasis added).  After two days of deliberations, the jury returned a verdict in favor of INA.

## II.

We conduct a plenary review when an appellant contends that the instructions to the jury, read as a whole, do not state the correct legal standard.[4]  Griffiths v. CIGNA Corp., 988 F.2d 457, 462 (3d Cir.) (citing Savarese v. Agriss, 883 F.2d 1194, 1202 (3d Cir. 1989)), cert. denied, 114 S. Ct. 186 (1993).  "[W]e will reverse if the instructions were capable of confusing and thereby misleading the jury."  Id. (citing Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1259 n.15 (3d Cir. 1991) (in banc)).[5]

---

[4].  The district court had jurisdiction over this matter pursuant to 29 U.S.C. §§ 623(a), 626(c)(1) and 28 U.S.C. § 1331.  We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

[5].  INA argues that Miller failed to preserve his objection to the jury charge.  We disagree.  Miller's counsel objected, both before and after the district court charged the jury, that plaintiff's burden on the issue of causation was to show that age was a determinative factor, and not the sole cause of the employment decision.  See Fed. R. Civ. P. 51; Dunn v. Hovic, 1 F.3d 1371, 1379 (3d Cir. 1993) (in banc) (holding that the purpose of Rule 51 is served when objections to the jury charge give the trial judge an opportunity to correct the erroneous charge), cert. denied, 114 S. Ct. 650 (1993).

Like Title VII which prohibits an employer from taking adverse employment actions against an employee "because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), the ADEA prohibits an employer from taking adverse employment actions against an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). Not surprisingly, the ADEA jurisprudence concerning this prohibition has followed the Title VII jurisprudence interpreting the analogous prohibition. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985); Seman v. Coplay Cement Co., 26 F.3d 428, 432 n.7 (3d Cir. 1994). A district judge in a case under either statute must, of course, instruct the jury in a manner consistent with Congress' mandate that the adverse employment action must have been taken "because of" the prohibited consideration.

The nature of the causal connection mandated by the use of the phrase "because of" in Title VII was a focus of the Supreme Court's opinions in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). The members of the Court differed as to whether "because of" meant that the forbidden consideration must be a "but-for" cause (i.e., one without which the adverse employment action would not have been taken) or only that the impermissible consideration must have "played a motivating part" in the decision to take that action. See id. at 244 (plurality opinion); id. at 262-63 (O'Connor, J., concurring in the

judgment).  All members of the Court agreed, however, that "because of" did not mean "solely because of."  See, e.g., id. at 241 (plurality opinion); id. at 284 (Kennedy, J., dissenting).

Justice Brennan, writing for himself and Justices Marshall, Blackmun, and Stevens, took the position that "because of" required only a finding that gender or some other prohibited consideration played a part in the decision to take the challenged action.  He explained their position in part as follows:

> We take these words to mean that gender must be irrelevant to employment decisions.  To construe the words "because of" as colloquial shorthand for "but-for causation," as does Price Waterhouse, is to misunderstand them.
>
> * * *
>
> The critical inquiry . . . is whether gender was a factor in the employment decision at the moment it was made.  Moreover, since we know that the words "because of" do not mean "solely because of,"7 we also know that Title VII meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations.  When, therefore, an employer considers both gender and legitimate factors at the time of making a decision, that decision was "because of" sex and the other, legitimate considerations -- even if we may say later, in the context of litigation, that the decision would have been the same if gender had not been taken into account.

7Congress specifically rejected an amendment that would have placed the word "solely" in front of the words "because of."  110 Cong. Rec. 2728, 13837 (1964).

<u>Price Waterhouse</u>, 490 U.S. at 240-41 (emphasis added and altered from original) (footnote omitted).

Justice Kennedy, writing in dissent for himself, the Chief Justice, and Justice Scalia, concluded that "because of" required "but-for" cause.  In doing so, he likewise rejected the suggestion that it was intended to mean "solely because of":

> By any normal understanding, the phrase "because of" conveys the idea that the motive in question made a difference to the outcome. We use the words this way in everyday speech. And assuming, as the plurality does, that we ought to consider the interpretive memorandum prepared by the statute's drafters, we find that this is what the words meant to them as well.  "To discriminate is to make a distinction, to make a difference in treatment or favor."  110 Cong. Rec. 7213 (1964).  Congress could not have chosen a clearer way to indicate that proof of liability under Title VII requires a showing that race, color, religion, sex, or national origin caused the decision at issue.
>
> Our decisions confirm that Title VII is not concerned with the mere presence of impermissible motives; it is directed to employment decisions that result from those motives.  The verbal formulae we have used in our precedents are synonymous with but-for causation.

> *  *  *

> We are told . . . that but-for cause is not required, since the words "because of" do not mean "<u>solely</u> because of."  <u>Ante</u>, at 241. <u>No one contends, however, that sex must be the sole cause of a decision before there is a Title VII violation.</u>  This is a separate question from whether consideration of sex must be <u>a</u> cause of the decision.  Under the accepted approach to causation that I have discussed, sex is a cause for the employment decision whenever, either by itself or in combination with other factors, it made a

> difference to the decision. <u>Discrimination need not be the sole cause in order for liability to arise, but merely a necessary element of the set of factors that caused the decision, i.e., a but-for cause.</u>

<u>Price Waterhouse</u>, 490 U.S. at 281-82, 284 (additional emphasis added).

Justice O'Connor, while concurring in the result reached in Justice Brennan's plurality opinion, disagreed with the plurality's reading of "because of" and agreed with that of the dissent:

> The legislative history of Title VII bears out what its plain language suggests: a substantive violation of the statute only occurs when consideration of an illegitimate criterion is the "but-for" cause of an adverse employment action. The legislative history makes it clear that Congress was attempting to eradicate discriminatory actions in the employment setting, not mere discriminatory thoughts. . . . Senator Case, whose views the plurality finds so persuasive elsewhere, responded:
>
>> "The man must do or fail to do something in regard to employment. There must be some specific external act, more than a mental act. Only if he does the act because of the grounds stated in the bill would there be any legal consequences." [100 Cong. Rec. 7254 (1964).]
>
> Thus, I disagree with the plurality's dictum that the words "because of" do not mean "but-for" causation; manifestly they do.

<u>Price Waterhouse</u>, 490 U.S. at 262-63. In the course of her opinion, Justice O'Connor likened the relevant principles to those involved in <u>Village of Arlington Heights v. Metropolitan</u>

Housing Development Corp., 429 U.S. 252 (1977), where the Court held that "the plaintiff was not required 'to prove that the challenged action rested solely on racially discriminatory purposes.'"  490 U.S. at 268 (emphasis supplied) (quoting Village of Arlington Heights, 429 U.S. at 265).

Finally, Justice White, who also concurred in the judgment of the Court, looked to Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977), for guidance in interpreting "because of."  In the context of a public employer's decision not to rehire an employee in part because of his exercise of First Amendment rights, the Court had there "rejected a rule of causation that focused 'solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire.'"  Price Waterhouse, 490 U.S. at 259 (quoting Mt. Healthy, 429 U.S. at 285).  Under the Mt. Healthy approach, the plaintiff was required to prove only that "the unlawful motive was a substantial factor in the adverse employment action," but there could be no liability if the defendant showed that it "'would have reached the same decision . . . even in the absence of the protected conduct.'"  Id. (quoting Mt. Healthy, 429 U.S. at 287).  A necessary corollary to this approach, according to Justice White, was that a plaintiff does not have "to prove that the illegitimate factor was the only, principal, or true reason for [the employer's] action."  Id.

We find it clear from the opinions in Price Waterhouse, and from the legislative history they cite, that Congress, by using the phrase "because of," did not mean "solely because of."

Even if we did not have this guidance, however, we would be reluctant to attribute to Congress an intention that an employer should be liable if a hiring or discharge decision is based solely on an employee's age and not liable if the decision is based primarily on the employee's age but also on the fact that the employee's supervisor did not like the employee's personality, hair color, or some other personal trait or conduct.[6]

Having concluded that "because of" does not mean "solely because of," we now look to the governing precedents to determine the proper jury instruction in an employment discrimination case that does not qualify for a mixed motives, burden shifting charge under Price Waterhouse.

---

[6]. We note that a majority of the Courts of Appeals have rejected the "sole cause" or "sole factor" formulation in pretext cases. See, e.g., Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1425 & n.3 (10th Cir. 1993); Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993); Purcell v. Seguin State Bank & Trust Co., 999 F.2d 950, 955 (5th Cir. 1993); Montana v. First Fed. Savs. & Loan Assoc., 869 F.2d 100, 105 (2d Cir. 1989); Cassino v. Reichhold Chems., Inc., 817 F.2d 1338, 1343-44 (9th Cir. 1987), cert. denied, 484 U.S. 1047 (1988); Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1181-82 (6th Cir. 1983); Loeb v. Textron, Inc., 600 F.2d 1003, 1019 (1st Cir. 1979). But see Foster v. University of Arkansas, 938 F.2d 111, 115-16 (8th Cir. 1991) (upholding a jury instruction that required plaintiff to prove the protected characteristic was "the determining" and "sole" factor and rejecting the formulation of "a determining factor" as improperly eliminating the distinction between "pretext" and "mixed motives" cases). We think it unclear what effect, if any, the Supreme Court's decision in St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993), will have on the standard enunciated by the Court of Appeals for the Eighth Circuit.

**IV.**

The Justices concurring in the judgment in <u>Price Waterhouse</u> declined to apply to the situation before them the familiar rules for allocating the burdens of production and persuasion found in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).[7]  They viewed those cases as "pretext" cases and the case before them as a "mixed motives" case.  The Court held that, in cases where the plaintiff offers "direct evidence" of unlawful discrimination and the evidence as a whole permits a conclusion that both permissible and impermissible considerations played a role in the employer's decision, the plaintiff need only show that the unlawful motive was a substantial motivating factor in that decision.  If the finder of fact concludes that the plaintiff has carried this burden, the burden of persuasion

---

[7].  As summarized in <u>Burdine</u>, those rules are:

> First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima facie case, the burden [of production] shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

<u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. at 252-53 (internal quotation and citation omitted).

shifts to the defendant to prove that the unlawful motive was not a but-for cause, i.e., that the same action would have been taken, because of legitimate considerations, in the absence of the unlawful motive.

The members of the Court concurring in the judgment in Price Waterhouse reached this result by different routes. Justices Brennan, Marshall, Blackmun, and Stevens read the statute as imposing liability in any situation where the unlawful motive was a "motivating" factor, but recognized an "affirmative defense" where the employer shows that the same actions would have been taken in the absence of the unlawful motive. Price Waterhouse, 490 U.S. at 244-45, 250. Justice O'Connor agreed with the three dissenters that the statute required but-for cause as a predicate to liability, but favored a burden shifting rule for cases in which the plaintiff "show[s] by direct evidence that an illegitimate criterion was a substantial factor in the decision." Id. at 276. In such cases, the burden shifts "to the employer to justify its decision," -- "to show that the decision would have been the same absent discrimination." Id. (internal quotation omitted). "[W]here a plaintiff has made this type of strong showing of illicit motivation, the factfinder is entitled to presume that the employer's discriminatory animus made a difference in the outcome, absent proof to the contrary from the employer." Id. Justice White found it unnecessary "to get into semantic discussions on whether Mt. Healthy . . . creates an affirmative defense." Price Waterhouse, 490 U.S. at 259. He

agreed with Justice O'Connor, however, that the plaintiff in Price Waterhouse had made the requisite showing that sex was a substantial factor in the employer's decision and that the "burden of persuasion then should have shifted to Price Waterhouse to prove" the same decision would have been made absent the unlawful motive. Id. at 259-60.

For present purposes, there are two important things to note about the several opinions in Price Waterhouse. First, a majority of the members of the Court did not endorse the plurality's view that Title VII imposed liability whenever a prohibited factor played a motivating role in the challenged decision. Justices O'Connor and White and the three dissenters rejected, in the words of Justice White, "a rule of causation that focused solely on whether [an impermissible motive] played a part, 'substantial' or otherwise, in a decision." 490 U.S. at 259 (internal quotation omitted). Second, while the holding of the Court fashioned a special rule reducing the plaintiff's burden of persuasion in a defined category of Title VII individual discrimination cases, a majority of the Court endorsed views of Title VII that would leave plaintiffs in other individual discrimination cases with the burden of showing but-for cause.

All members of the Court now seem to agree that a showing of but-for causation by the plaintiff is required in ADEA cases that do not call for special treatment under Price Waterhouse. In Hazen Paper Co., 113 S. Ct. 1701 (1993), the plaintiff, like the plaintiff here, claimed that he had been

discharged because of his age in violation of the ADEA.  The Supreme Court was called upon to address the relationship between the standard of ordinary liability under the ADEA and the standard of liability for liquidated damages under the provision of that Act authorizing such damages for "willful" violations. With respect to the former, Justice O'Connor, writing for a unanimous Court, reviewed the case law applicable to disparate treatment (i.e., individual discrimination) cases and concluded as follows:

> Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.

Id. at 1706.

With respect to the standard of liability for liquidated damages, the Court held:

> We therefore reaffirm that the Thurston definition of "willful" -- that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute -- applies to all disparate treatment cases under the ADEA. Once a "willful" violation has been shown, the employee need not additionally . . . prove that age was the predominant rather than a determinative factor in the employment decision.

Id. at 1710.

We find support in Hazen Paper for our earlier conclusion that "because of" does not mean "solely because of." If an ADEA plaintiff need not show that age was "the predominant factor" in order to establish liability for liquidated damages,

surely such a plaintiff does not have to show that age was the sole cause of the challenged decision in order to establish a right to normal forms of relief.  We also believe Hazen Paper provides an authoritative answer to our second inquiry.  A plaintiff in an ADEA case who does not qualify for a burden shifting instruction under Price Waterhouse has the burden of persuading the trier of fact by a preponderance of the evidence that there is a "but-for" causal connection between the plaintiff's age and the employer's adverse action -- i.e., that age "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome" of that process.  Hazen Paper, 113 S. Ct. at 1706.

## V.

We find further support for our holding in the Supreme Court's decision in St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993).  That decision makes clear that the trier of fact in a pretext case is not limited to a choice between finding that the alleged discriminatory motive or the employer's nondiscriminatory explanation was the sole cause of the employment action.  At the time we decided Griffiths v CIGNA Corp., 988 F.2d 457 (3d Cir.), cert. denied, 114 S. Ct. 186 (1993),[8] it was possible to view all pretext cases as presenting

[8].  INA insists that our decision in Griffiths mandated the "sole cause" instructions given by the district court in this case.  INA's reading of Griffiths would be inconsistent with a long line of decisions of this court, including our in banc decision in Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir.) (holding that an ADEA plaintiff "need not prove that age was the

only two possibilities: the fact finder could conclude either that the plaintiff had succeeded in proving that the employer's explanation was a pretext for discrimination, or that the plaintiff had failed to so prove.  Under this view, if the plaintiff proved the employer's proffered reason was pretextual, the trier of fact presumed, as a matter of law, that the impermissible cause alleged by plaintiff was the sole cause of the employer's decision.

St. Mary's instructs that this bipolar view of pretext cases is inaccurate.  A finding that the employer's nondiscriminatory explanation is a pretext permits, but does not require, the trier of fact to conclude that the employer discriminated against the plaintiff based on the ground alleged. St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1993).

In St. Mary's, the plaintiff, an African-American, had been demoted and ultimately discharged by his employer.  He brought suit under Title VII, asserting that the employer's actions were the result of racial animus.  The employer insisted it took these actions because the plaintiff on a number of
(..continued)
employer's sole or exclusive consideration, but must prove that age made a difference in the decision"), cert. dismissed, 483 U.S. 1052 (1987); see also Bellissimo v. Westinghouse Elec. Corp., 764 F.2d 175, 179 n.1 (3d Cir. 1985) (finding the requirement of proving that the improper motive was "'the determinative factor' [to be] inconsistent with the 'but-for' causation test"), cert. denied, 475 U.S. 1035 (1986).  To the extent language in Griffiths can be read to suggest that the charge in this case was appropriate, it is hereby overruled.

occasions had permitted his subordinates to break institutional rules, and on one occasion had threatened his superior.  See Hicks v. St. Mary's Honor Ctr., 756 F. Supp. 1244, 1246-48 (E.D. Mo. 1991).  The district court, as the trier of fact, found that the threatening conduct and rules violations had occurred, but concluded that neither these events nor the plaintiff's race was the real reason for plaintiff's demotion and discharge.  Rather, the district court concluded that "although [the] plaintiff ha[d] proven the existence of a crusade to terminate him, he [had] not proven that the crusade was racially rather than personally motivated."  Id. at 1252.

The court of appeals, viewing pretext cases as bipolar, ruled that, once the plaintiff proved the employer's proffered reasons were pretextual, he was entitled to judgment as a matter of law.  Hicks v. St. Mary's Honor Ctr., 970 F.2d 487, 492 (8th Cir. 1992).  The Supreme Court reversed, concluding that the trier of fact's rejection of the employer's proffered reason for its action did not compel the conclusion that race was the sole cause of the employment decision.  St. Mary's Honor Ctr., 113 S. Ct. at 2749-51.  Rather, the record evidence supported three possible causes: race, threats and violations of the employer's rules, and personal animosity.  The Supreme Court ruled that the trier of fact was entitled to draw from the record evidence whatever inferences that evidence would support.  Since the district court concluded that the explanation advanced by the employer was a pretext, it could have further inferred that there was an impermissible motive to hide.  It was not required to do

so, however.  If the district court inferred that personal animosity was the cause of the demotion and discharge, that, too, was permissible.

We think it clear from the Supreme Court's opinion in St. Mary's that the trier of fact in a pretext case, where the record will support it, may choose not to accept either party's litigating position as reflecting the whole truth.  This may, as in St. Mary's, take the form of a conclusion that the adverse action was taken for a reason other than the reasons urged by the parties.  It may also take the form of a conclusion that the alleged discrimination and the employer's nondiscriminatory explanation both played a role in the employer's decision.  If the plaintiff, for example, argues that he or she was discharged because of age and the employer insists that it was because of the plaintiff's record of absenteeism, the trier of fact may conclude that the plaintiff's absenteeism record played a part, but that the plaintiff would not have been fired if he or she were twenty years younger.

In some cases, the evidence may be such that the use of "sole factor" or "sole cause" to describe the plaintiff's burden would be harmless error.  We perceive no reason, however, why a trial court would choose to use those phrases in any case.  Even in those rare cases where the evidence appears to present the jury with only a bipolar choice, such phrases misstate the law and hold a potential for creating a misunderstanding in the minds of the jury that may outlive their service in that particular case.

In most age discrimination cases that get to the jury, the record will support an inference that both a legitimate and an illegitimate reason played a role in the employer's decision and the charge must provide for the possibility that the jury will find the employer's decision to be the product of more than one consideration. In those cases, the court must charge, in accordance with Hazen Paper, that the plaintiff's burden is to show that the prohibited consideration played a role in the decisionmaking process and that it had a determinative influence on the outcome of that process.[9]

---

[9]. We are here, of course, describing cases in which the challenged action of the employer may be the product of two or more motives. It is important to understand, however, that these cases do not fall within the legal category of "mixed motives" cases reserved for special treatment under Price Waterhouse. As we explained more fully in Griffiths, 988 F.2d at 470, and Hook v. Ernst & Young, 28 F.3d 366, 373-76 (3d Cir., May, 1994), "mixed motives" cases are cases not only where the record would support a conclusion that both legitimate and illegitimate factors played a role in the employer's decision, but where the plaintiff's evidence of discrimination is sufficiently "direct" to shift the burden of proof to the employer on the issue of whether the same decision would have been made in the absence of the discriminatory animus. The term of art "mixed motive" is thus misleading because it describes only a small subset of all employment discrimination cases in which the employer may have had more than one motive. Under Price Waterhouse, the correct wording of a causation instruction to a jury differs depending on whether the case before the court is a "mixed motives" or a "pretext" case as those categories are defined in that case. Only in a "mixed motives" ADEA case is the plaintiff entitled to an instruction that he or she need show only that the forbidden motive played a role, i.e., was "a motivating factor." Even then, the instruction must be followed by an explanation that the defendant may escape liability by showing that the challenged action would have been taken in the absence of the forbidden motive. See Griffiths v. CIGNA Corp., 988 F.2d at 472. In all other ADEA disparate treatment cases, the jury should be instructed that the plaintiff may meet his or her burden only by showing that age played a role in the employer's decisionmaking

## VI.

In this case, the district court's repeated reference to "sole cause" and "sole factor" was not harmless error. Miller alleged that because of his age, he was not selected for various open high level management positions for which he was qualified and that thereafter he was terminated. For each of the open positions his employer offered evidence to show that Miller was not qualified or that he was less qualified than the candidate ultimately selected. Based on the evidence presented at trial, a jury could well have concluded that both Miller's and the employer's explanations were accurate--that Miller was qualified for one or more of the open positions, that the employer's promotion and hiring decisionmaking process contained a bias in favor of younger employees, and that Miller's credentials did not sufficiently distinguish him from the competing candidates to overcome this bias.

For example, with respect to the vacancy for general manager with CIGNA Reinsurance Company, United Kingdom (the "CIGNA UK position"), the manager responsible for filling that position testified that he wrote the job description with Michael Durkin, the successful candidate, in mind; that Durkin had most of the qualities needed for that position; and that Durkin had more experience than Miller in reinsurance and accounting work.

(..continued)
process and that it had a determinative effect on the outcome of that process.

A jury who credited the employer's evidence could therefore conclude that Durkin's promotion was a legitimate hiring decision. However, Miller testified that he had extensive reinsurance experience as well as substantially more management experience and skills than Durkin -- one of the qualifications for the position. Durkin had managed a staff of only twenty employees, while Miller had managed much larger groups. Miller also testified that when he expressed interest in the CIGNA UK position the president of that division told him he was "overqualified." Miller also offered evidence that Durkin had obtained his reinsurance experience in part through his manager's desire to cross-train and develop him for this type of managerial promotion. Miller additionally points out that many of the INA managers responsible for the hiring decisions at issue, including the manager who filled the CIGNA UK position, testified that they eschewed the company's formal inter-departmental placement process available for positions above grade fifty-four for an informal and personal decisionmaking process. This testimony lends credence to Miller's theory that the promotion and hiring decisions for upper level management positions were susceptible to age-animus. Accordingly, a jury crediting Miller's evidence could infer that the decision not to consider or select him for the CIGNA UK position was based on age.

Because INA's and Miller's explanations were not inherently contradictory, however, it would have been possible for the jury to find that the company considered both Miller's qualifications and his age, and that both factored into the

relevant hiring decisions. Thus, the jury could have reasonably concluded that Miller was less than ideally qualified for a particular position and that this was a factor in INA's decisionmaking process. At the same time, it could reasonably have concluded that INA's decisionmakers were biased in favor of younger workers and a younger person with Miller's credentials would have been assigned to the post.

The ADEA's protection against age discrimination is not limited to perfectly qualified employees. As the court observed in Shager v. Upjohn Co., 913 F.2d 398, 403 (7th Cir. 1990): "The statute does not protect merely the older worker who is perfect from the standpoint of his employer; such a worker needs no protection except from irrational employers, and they are rare. It protects, as a practical matter, the imperfect older worker from being treated worse than the imperfect younger one." Cf. Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221, 1233 (3d Cir. 1994) ("[N]either Title VII nor ADEA strips a wrongdoing employee of his or her entitlement to protection against unlawful discrimination."). Despite his imperfect credentials, Miller should have prevailed if he would not have been passed over but for his age. The district court's "sole cause" charge did not permit the jury to find in Miller's favor on this basis. It follows that Miller is entitled to a new trial.

## VII.

We hold that in an ADEA case which does not qualify for a burden shifting instruction under Price Waterhouse, a district

court should instruct the jury that the plaintiff must prove by a preponderance of the evidence that age played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process.[10]  Since the district court instructed that age must be shown to be the sole cause of the employer's decision and since the record would support a conclusion that, while other factors played a role, age was a determinative factor, we will reverse and remand for a new trial.

                                    **Miller v. CIGNA Corporation; The Insurance Company of North America**, No. 93-1773

**GREENBERG**, Circuit Judge, concurring in part and concurring in the judgment.

        To put it succinctly, the question before us is the effect of <u>Hazen Paper Co. v. Biggins</u>, ____ U.S. ____, 113 S.Ct. 1701 (1993), and <u>St. Mary's Honor Center v. Hicks</u>, ____ U.S. ____, 113 S.Ct. 2742 (1993), on our holding in <u>Griffiths v. CIGNA Corp.</u>, 988 F.2d 457 (3d Cir.), <u>cert. denied</u>, ____ U.S. ____, 114 S.Ct. 186 (1993), that there are two types of cases under the

---

[10].  In the course of this opinion, we have relied on Title VII cases because the development of the relevant case law under the two statutes prior to the Civil Rights Act of 1991 followed parallel courses.  Section 107 of the 1991 Civil Rights Act, codified at 42 U.S.C. § 2000e-2(m), provides that "an unlawful employment practice is established when the complaining party demonstrates that [a prohibited consideration] was a motivating factor for any employment practice, even though other factors also motivated the practice."  The substantive provisions of the 1991 Act that amended Title VII did not amend the ADEA, and Miller does not contend that section 107 is applicable to ADEA cases.

ADEA -- mixed motives cases and pretext cases -- and that in the latter, the plaintiff must show that age was the determinative factor in the adverse employment decision.  The majority correctly concludes that "in ADEA cases that do not qualify for a burden shifting charge under Price Waterhouse . . . district courts should instruct the jury that the plaintiff's burden is to prove that age played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process."  Typescript at 3.  I thus join in the Introduction and Parts I, II, VI and VII of the majority Opinion.  I write separately for three reasons:  First, I cannot accept portions of the majority's analysis in Parts III, IV and V.  Second, the area of employment discrimination law is cursed with elusive terms like "mixed motives" and "pretext," and with numerous presumptions, inferences and burden-shifting rules.  Those terms and rules historically often have taken on lives of their own, independent of their connection to the underlying theories of liability that gave them birth.  Thus, a "mixed motives" case is not about mixed motives, and a "pretext" case has little to do with pretext.  I believe the time has come to clarify the current status of theories of ADEA liability, and to dispense with unhelpful monikers whenever possible.  Thus, unlike the in banc majority, I would dispense altogether with the terms "pretext" and "mixed motives" and hold explicitly that the same standard applies to all disparate treatment cases.  Finally, I believe

that the entire debate over "but-for" causation makes something out of nothing, and that district courts should feel free to instruct juries in all ADEA cases that a plaintiff does not succeed unless but-for causation is shown.

I.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), the Supreme Court first set forth the order of proof in disparate treatment cases, and the Court elaborated upon and explained the framework in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981). In the later case, the Court described the process as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' [McDonnell Douglas], at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id. at 804, 93 S.Ct., at 1825.

Burdine, 450 U.S. at 252-53, 101 S.Ct. at 1093. Burdine repeatedly speaks about the employer's "true" reason for the discharge, see id. at 256, 101 S.Ct. at 1095, and therefore, the opinion was cast in either-or terms. Post-Burdine cases

reaffirmed this proposition.  See, e.g., N.L.R.B. v. Transportation Management Corp., 462 U.S. 393, 400 n.5, 103 S.Ct. 2469, 2473 n.5 (1983) (in Burdine, "[t]he Court discussed only the situation in which the issue is whether either illegal or legal motives, but not both, were the 'true' motives behind the decision"); United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 717, 718, 103 S.Ct. 1478, 1483 (1983) ("a plaintiff prevail[s] when at the third stage of a Title VII trial he demonstrates that the legitimate, nondiscriminatory reason given by the employer is in fact not the true reason for the employment decision") (Blackmun, J., concurring).  Thus, the pre-Price Waterhouse jurisprudence "assumed . . . that a single impulse moves the employer who discriminates," see Theodore Y. Blumoff & Harold S. Lewis, Jr., The Reagan Court and Title VII: A Common-Law Outlook on a Statutory Task, 69 N.C.L. Rev. 1, 47 (1990), and that all disparate treatment claims could be analyzed under Burdine's either-or pretext framework.  This did not mean that the Court foreclosed liability when more than one cause motivated the adverse employment decision, but only that the employment discrimination cases coming before the Court were argued under the Burdine pretext framework.

Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989), changed the employment discrimination liability landscape, but not in the way the in banc majority suggests.  In my view, the majority confuses Price Waterhouse's general holding

that plaintiffs may obtain relief despite their inability to fit their proofs into Burdine's pretext framework, with the standard for causation in cases that do proceed under Burdine.  The majority correctly points out that "[a]ll members of the [Price Waterhouse] Court agreed . . . that 'because of' did not mean 'solely because of.'"  Typescript at 12.  But the quotations from the Price Waterhouse opinions demonstrate only that in that case, all members of the Court agreed that plaintiffs were not without a remedy if their proofs did not fit into the classic Burdine mold.  Rather, all members of the Court agreed that when there is no one true reason behind the discharge, the employer in certain circumstances still could be liable.  The Price Waterhouse dissent suggested interpreting Burdine so that it could cover all claims of disparate treatment.  But a majority of the Court chose to retain Burdine's framework for pretext cases, and to provide a separate theory of liability, together with a separate order of proof, to apply in cases involving both legitimate and illegitimate reasons for the adverse employment action.

Thus, Price Waterhouse does not support the conclusion that in a pretext case, a plaintiff need not prove that age was the determinative factor in the employment decision.  Quite the contrary, a majority of the justices explicitly reaffirmed Burdine's assumption that in a pretext case, as opposed to a mixed motives case, the illicit reason must be the determinative cause.  Crucial passages in the various opinions, that the in

banc majority does not cite, demonstrate that a majority of the Price Waterhouse court viewed Burdine's "one or the other" description of pretext liability as still viable in cases proceeding under a pretext theory.  Writing for himself as well as Justices Marshall, Blackmun and Stevens, Justice Brennan distinguished Burdine as follows:

> Where a decision was the product of a mixture of legitimate and illegitimate motives . . . it simply makes no sense to ask whether the legitimate reason was 'the "true reason"' (Brief for Petitioner 20 (emphasis added)) for the decision -- which is the question asked by Burdine.  See Transportation Management, supra, at 400, n.5, 103 S.Ct., at 2473, n.5.  Oblivious to this last point, the dissent would insist that Burdine's framework perform work that it was never intended to perform.  It would require a plaintiff who challenges an adverse employment decision in which both legitimate and illegitimate considerations played a part to pretend that the decision, in fact, stemmed from a single source -- for the premise of Burdine is that either a legitimate or an illegitimate set of considerations led to the challenged decision.  To say that Burdine's evidentiary scheme will not help us decide a case admittedly involving both kinds of considerations is not to cast aspersions on the utility of that scheme in the circumstances for which it was designed.

Price Waterhouse, 490 U.S. at 247, 109 S.Ct. at 1788-89 (plurality opinion).  Moreover, in discussing the standards for proving liability in a mixed motives case, the plurality pointed out that "[i]f the plaintiff fails to satisfy the factfinder that it is more likely than not that a forbidden characteristic played a part in the employment decision, then she may prevail only if

she proves, following Burdine, that the employer's stated reason for its decision is pretextual." Id. at 247, 109 S.Ct. at 1789 n.12 (plurality opinion). Justice White similarly drew this distinction:

> The Court has made clear that 'mixed-motives' cases, such as the present one, are different from pretext cases such as McDonnell Douglas and Burdine. In pretext cases, 'the issue is whether either illegal or legal motives, but not both, were the "true" motives behind the decision.' NLRB v. Transportation Management Corp., 462 U.S. 393, 400 n.5, 103 S.Ct. 2469, 2473 n.5 (1983). In mixed-motives cases, however, there is no one 'true' motive behind the decision.

Id. at 260, 109 S.Ct. at 1796 (White, J., concurring).

In fact, the Price Waterhouse plurality's theory of employment discrimination liability necessarily assumed that a plaintiff proceeding under a mixed motives theory could not succeed under a pretext theory. This is because of the following: In a pretext case, the defendant responds to the plaintiff's prima facie case by offering legitimate nondiscriminatory reasons for the discharge. The plaintiff then must prove that those reasons are pretextual. If a plaintiff cannot prove that the proffered reasons for the discharge were not in fact real reasons, then by definition the plaintiff has failed to demonstrate pretext, and has failed the third prong of the Burdine test. Assume, however, that the district court is convinced that even though the defendant's proof has gone unrebutted, the plaintiff nonetheless has proven that age played

a role in the adverse employment decision. That is a scenario in which both legitimate and illegitimate factors played a role in the decision. Here, the Price Waterhouse scenario comes into play, and even though the claim fails under Burdine, the defendant would have the burden of disproving but-for causation.

Thus, Price Waterhouse is important not because it said anything about the standard for showing pretext liability but because it constituted the first time the Supreme Court explicitly decided that Burdine liability, while alive and well, did not provide the only framework for imposing liability. I believe, then, that the in banc majority is wrong to suggest that the Price Waterhouse majority used "mixed motives" as a "term of art" that describes "only a small subset of all employment discrimination in which the employer may have had more than one motive." Typescript at 26 n.9. To be sure, there is language in the various Price Waterhouse opinions addressing the evidence the plaintiff must adduce to prove that the illicit criterion played a role in the decision. But, at least in Price Waterhouse, the nature of the evidence that can be used "to satisfy the factfinder that it is more likely than not that a forbidden characteristic played a part in the employment decision," Price Waterhouse, 490 U.S. at 247 n.12, 109 S.Ct. at 1789 n.12, is a question separate and apart from how a plaintiff can proceed when he or she is unable to prove pretext. In fact, in the wake of Price Waterhouse, a number of courts have addressed the nature of

the proofs required to shift the burden in an employment discrimination case, and have arrived at differing results. That is hardly surprising, since Price Waterhouse does not address that question. Compare White v. Federal Express Corp., 939 F.2d 157, 160 (4th Cir. 1991) ("To show discrimination in a mixed motive case . . . a plaintiff . . . may carry its burden under ordinary principles of proof by any sufficiently probative direct or indirect evidence") with Brown v. East Mississippi Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993) ("[w]hen a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer . . . .") (emphasis added). For our part, we have held that "[a]t a bare minimum, a plaintiff seeking to advance a mixed motive case will have to adduce circumstantial evidence 'of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude'." Griffiths, 988 F.2d at 470 (quoting Ostrowski v. Atlantic Mut. Ins. Cas., 968 F.2d 171, 182 (2d Cir. 1992)).

In short, then, a majority of the justices in Price Waterhouse held that Title VII provides two theories of liability: (1) pretext, or Burdine analysis, under which an employee only wins by showing that the employer's proffered reason for the adverse employment decision was pretextual and

that, in fact, the decision was based solely on illegitimate factors; (2) mixed motives cases, in which the trier of fact concludes that both licit and illicit motives played a role in the employment decision, and where the burden shifts to the employer to prove that it would have made the same decision absent the illegitimate motive.  This means that the in banc majority's conclusion that "we would be reluctant to attribute to Congress an intention that an employer should be liable if a hiring or discharge decision is based solely on an employee's age and not liable if the decision is based primarily on the employee's age but also on the fact that the employee's supervisor did not like the employee's personality, hair color, or some other personal trait or conduct," Typescript at 16, really states the obvious.  Other than perhaps the appellant in Price Waterhouse, few contended or contend that a plaintiff would always lose under the ADEA if age was not the determinative factor.  The question is how to analyze claims alleging both legitimate and illegitimate motives.


                              II.

     The in banc majority's description of Price Waterhouse derives not from the opinions in the Price Waterhouse majority, but from the Price Waterhouse dissent's characterization of the Court's holding.[11]  Justice Kennedy's dissent in Price Waterhouse

---

[11].  It is evident that we decided Griffiths correctly, as Griffiths was after Price Waterhouse but before Hazen.  Of

sought to recast the Court's analytical grounding away from the theory underlying the plaintiff's case and in terms of the type of evidence the plaintiff had adduced to prove disparate treatment.  Writing for himself, the Chief Justice and Justice Scalia, Justice Kennedy began by describing his view of the court's holding:

> I read the opinions as establishing that in a limited number of cases Title VII plaintiffs, by presenting direct and substantial evidence of discriminatory animus, may shift the burden of persuasion to the defendant to show that an adverse employment decision would have been supported by legitimate reasons. The shift in the burden of persuasion occurs only where a plaintiff proves by direct evidence that an unlawful motive was a substantial factor actually relied upon in making the decision. . . . In sum, the court alters the evidentiary framework of <u>McDonnell Douglas</u> and <u>Burdine</u> for a closely defined set of cases.

<u>Price Waterhouse</u>, 490 U.S. at 280, 109 S.Ct. at 1806 (Kennedy, J., dissenting).  Thus, in the dissent's view, the court did not draw a distinction between pretext cases and mixed motives cases but rather between direct evidence cases and circumstantial evidence cases.[12]  More than that, the dissent appeared to

(..continued)
course, <u>Price Waterhouse</u> constituted the first stage in a process that ultimately saw the Supreme Court abandoning the notion that there are different theories of disparate treatment liability.

[12]. The dissent disagreed with this distinction as well:  "Our opinions make plain that <u>Burdine</u> applies to all individual disparate-treatment cases, whether the plaintiff offers direct proof that discrimination motivated the employer's actions or chooses the indirect method of showing that the employer's proffered justification is false, that is to say, a pretext.  <u>See</u> <u>Aikens</u>, supra, at 714 n.3, 103 S.Ct. at 1481 n.3 ('As in any

criticize the plurality opinion for the latter's assumption that

pretext analysis requires proof of sole cause:

> The plurality tries to reconcile its approach
> with Burdine by announcing that it applies
> only to a 'pretext' case, which it defines as
> a case in which the plaintiff attempts to
> prove that the employer's proffered
> explanation is itself false. . . . This
> ignores the language of Burdine, which states
> that a plaintiff may succeed in meeting her
> ultimate burden of persuasion 'either
> directly by persuading the court that a
> discriminatory reason more likely motivated
> the employer or indirectly by showing that
> the employer's proffered explanation is
> unworthy of credence.' 450 U.S., at 256, 101
> S.Ct., at 1095 (emphasis added). Under the
> first of these two alternative methods, a
> plaintiff meets her burden if she can
> 'persuade the court that the employment
> decision more likely than not was motivated
> by a discriminatory reason.' United States
> Postal Service Bd. of Governors v. Aikens,
> 460 U.S. 711, 717-18 (1983) (Blackmun, J.,
> concurring).

Price Waterhouse, 490 U.S. at 287-88, 109 S.Ct. at 1810. The

dissent's view is totally compatible with the in banc majority's

(and my) conclusion that in all but a limited number of cases,

the holding of Price Waterhouse is irrelevant. See id. at 280,

109 S.Ct. at 1806 (Kennedy, J., dissenting) ("In sum, the Court

alters the evidentiary framework of McDonnell Douglas and Burdine

for a closely defined set of cases."). Indeed, I believe it is

(..continued)
lawsuit, the plaintiff may prove his case by direct or
circumstantial evidence.')". Price Waterhouse, 490 U.S. at 288,
109 S.Ct. at 1810 (Kennedy, J., dissenting).

impossible to square the Price Waterhouse majority's framework with the language of subsequent Supreme Court cases.

The Price Waterhouse dissent explicitly criticized the Court for unnecessarily complicating disparate treatment analysis by dividing it into various theories.  See Price Waterhouse, 490 U.S. at 279, 109 S.Ct. at 1806 (Kennedy, J., dissenting) ("Continued adherence to the evidentiary scheme established in [McDonnell Douglas and Burdine] is a wiser course than creation of more disarray in an area of the law already difficult for the bench and bar.").  Just four years later, that view became the majority.  In Hazen Paper Co. v. Biggins, ____ U.S. ____, 113 S.Ct. 1701 (1993), the Court clarified the standards for proving disparate treatment under the ADEA.  In no uncertain terms, the Court held that:

> Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.

Id. at ____, 113 S.Ct. at 1706.  One thing is clear from this language:  In no disparate treatment case must a plaintiff prove that the illicit motive was the determinative factor.  It necessarily follows that the Court's distinction in Price Waterhouse between pretext cases and mixed motives cases no longer proves a viable rationale for the Price Waterhouse's burden-shifting approach.  This is because in light of Hazen, a plaintiff need not prove that age was the determinative factor to

prove liability in a pretext case -- rather, under the language of Hazen, a plaintiff could succeed under Burdine without proving that the employer's reasons are wholly pretextual.  And, if the reasons are not wholly pretextual, some of them must be true. Further still, if some of the employer's reasons are true, pretext cases sometimes involve mixed motives.  Thus, after Hazen, the burden-shifting approach of Price Waterhouse -- if it survives at all -- must rest not on the distinction between cases involving mixed motives and cases involving pretexts for discrimination, but rather on the distinction between circumstantial evidence cases and direct evidence cases -- the distinction drawn by Justice Kennedy in his Price Waterhouse dissent.  Thus, in my view, this court should not continue to refer to the term "mixed motives" and then define it as meaning something other than mixed motives.  See Typescript at 26 n.9. Instead, we simply should abandon the term altogether.

Along with abandoning the notion of an independent category of "mixed motives" cases, Hazen is important for another reason as well -- it signalled discomfort with the Burdine scheme of apportioning burdens and presumptions, and consequently, with the entire notion of "pretext" liability.  In this regard, the Court foreshadowed its decision in St. Mary's by pointing out that "inferring age-motivation from the implausibility of the employer's explanation may be problematic in cases where other unsavory motives, such as pension interference, were present."

<u>Id.</u> at ____, 113 S.Ct. at 1708.  Hence, the Court expressed

wariness about the "one or the other" approach of the pretext

cases.  The Court supported this critique by pointing to language

in pretext cases tending to show that liability could be imposed

under the ADEA even when age was not a motivating factor:

> Although some language in our prior decisions might be read to mean that an employer violates the ADEA whenever its reason for firing an employee is improper <u>in any respect</u>, see <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973) (creating proof framework applicable to ADEA) (employer must have 'legitimate, nondiscriminatory reason' for action against employee), this reading is obviously incorrect.  For example, it cannot be true that an employer who fires an older black worker because the worker is black thereby violates the ADEA.  The employee's race is an improper reason, but it is improper under Title VII, not the ADEA.

<u>Hazen</u>, ____ U.S. at ____, 113 S.Ct. at 1707.  Thus, with the

criticism of <u>Burdine</u> generally, and with the Court's holding that

in all disparate treatment cases the plaintiff need only prove

that the illicit factor had a determinative effect on the

outcome, the Court strongly signalled the end of pretext

liability as a distinct theory of disparate treatment liability.

        <u>St. Mary's</u> made the point even more explicit, and

abandoned the notion of pretext liability altogether.  In that

case, the Supreme Court rejected the view that when a plaintiff

proves an employer's proffered reasons for the adverse employment

action is pretextual, the plaintiff automatically wins.  Rather,

in a disparate treatment case, the plaintiff must prove intentional discrimination, and the concept of affirmative proof is analytically distinct from proving other explanations wrong. St. Mary's qualified this by saying that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Id. at ____, 113 S.Ct. at 2749. And, as the in banc majority recognizes, "[a] finding that the employer's nondiscriminatory explanation is a pretext permits, but does not require, the trier of fact to conclude that the employer discriminated against the plaintiff based on the ground alleged." Typescript at 23. But by focusing on what St. Mary's says about "sole cause," the majority misses the real significance of St. Mary's, and may perpetuate misreadings of the case both in our own case law and in the commentary.

If we interpret St. Mary's purely within the pretext paradigm, as the in banc majority appears to do,[13] the case can be read to say that in all disparate treatment cases proceeding within the Burdine framework, the plaintiff must, at a minimum, prove pretext. After all, that is how Burdine described the

_____

[13]. See typescript at 24 ("We think it clear from the Supreme Court's opinion in St. Mary's that the trier of fact in a pretext case where the record will support it, may choose not to accept either party's litigating position as reflecting the whole truth.") (emphasis added).

three-pronged test.  And, we recently held in <u>Armbruster v. Unisys Corp.</u>, 32 F.3d 768, 782 (3d Cir. 1994), that in a post-<u>St. Mary's</u> pretext case "a plaintiff who claims invidious discrimination but lacks overt evidence of discriminatory animus <u>must</u> point to evidence tending to show the defendant's explanation is pretextual."  (Emphasis added).  If that is true, however, we very nearly are back at sole cause again.  This is because the plaintiff is being forced not only to make an affirmative showing but also affirmatively to disprove facts. See <u>Armbruster</u>, 32 F.3d at 783 ("After <u>St. Mary's</u>, it seems clear . . . that the trier of fact cannot find for the plaintiff merely because it disbelieves the defendant's proffered explanation; it must <u>also</u> be persuaded that the employment decision was the result of the bias that can be inferred from the falsity of the defendant's explanation.") (emphasis added); <u>id.</u> ("an ultimate finding of illegal discrimination in a pretext case requires evidence showing a <u>prima facie</u> case <u>and</u> evidence showing pretext") (second alteration added); <u>see also</u> Michael A. Zubrensky, <u>Despite the Smoke, There Is No Gun</u>:  <u>Direct Evidence Requirements in Mixed-Motives Employment Law After Price Waterhouse v. Hopkins</u>, 46 Stan. L. Rev. 959, 964 (1994) ("plaintiffs [must] disprove unstated reasons for the employment decision").  But, as <u>Hazen</u> makes clear, in no disparate treatment case must a plaintiff prove that the illicit factor was the sole or determinative cause of the adverse employment action.

Therefore, to read St. Mary's as requiring a plaintiff to prove pretext is to misread the case.

The point of St. Mary's was not to place a dual burden on plaintiffs, but rather to treat disparate treatment discrimination cases -- after the plaintiff has established a prima facie case and after the defendant has met its burden of production -- just like any other case where the plaintiff bears the burden of proof. See also Gehring v. Case Corp., No. 94-1371, 1994 WL 715285 at *1 (7th Cir. Dec. 18, 1994) ("Once the judge finds that the plaintiff has made the minimum necessary demonstration (the 'prima facie case') and that the defendant has produced an age neutral explanation . . . the only remaining question . . . the jury need answer is whether the plaintiff is a victim of intentional discrimination.")  After the plaintiff and the defendant have met their initial burdens, the entire Burdine procedure no longer is of any relevance (apart from the fact that the procedure provided a mechanism to get evidence before the court).  Id.  To be sure, the plaintiff may attempt to prove intentional discrimination solely by focusing on the falsity of the defendant's explanations, see St. Mary's, ___ U.S. at ____ n.4, 113 S.Ct. at 2749 n.4, but that only means that if a jury disbelieves the defendant's argument, it may believe the opposite.  Nothing in that proposition is peculiar to age discrimination claims.  In other words, the plaintiff certainly is not required to rebut the defendant's proffered reasons

completely, if he or she nonetheless is able to establish that the illicit motive was a but-for cause of the adverse employment decision.  See St. Mary's, ____ U.S. at ____, 113 S.Ct. at 2749 n.4 ("there must be a finding of discrimination");  id. at ____, 113 S.Ct. at 2751 (employee must prove "that the employer has unlawfully discriminated");  id. at ____, 113 S.Ct. at 2752 ("proving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination");  id. at ____, 113 S.Ct. at 2753-54 ("[O]nce the defendant has responded to the plaintiff's prima facie case, 'the district court has before it all the evidence it needs to decide' not (as the dissent would have it) whether the defendant's response is credible, but 'whether the defendant intentionally discriminated against the plaintiff.'") (citation omitted).

The problem probably arose with St. Mary's assumption that proving pretext is easier than affirmatively proving intentional discrimination.  St. Mary's assumed that when the factfinder is focussed purely on whether the defendant's proffered reasons are true, the plaintiff is somehow getting off the hook.  In some cases that may be true.  But that assumption certainly is incorrect as a general proposition.  Rather, it may be much more difficult to disprove an employer's explanation than to point to evidence tending to show that even if the employer's

explanation is partly correct, the illicit motive also caused the action.

But putting that incorrect assumption aside, the real point of St. Mary's was to focus the factfinder in all disparate treatment cases away from the question of pretext and instead on the question of whether intentional discrimination took place. St. Mary's is important because it tells district courts to dispense with abstract pretext analysis altogether except insofar as it sheds light on whether intentional discrimination took place. As in all cases, there must be evidence in the record to support a finding in favor of the plaintiff on the ultimate question. As Hazen makes clear, when the plaintiff is not required to prove sole cause, it should not matter at all that a legitimate reason played a role in the process. Thus, once the defendant has met its proffer, the jury should be instructed that it should consider evidence of the prima facie case, evidence of legitimate explanations, evidence bearing on the credibility of those explanations, and all other relevant evidence in the case to determine whether the employer discriminated against the plaintiff.

By abandoning sole cause as the basis for pretext liability, Hazen makes clear that there is no separate category of mixed motives cases. By turning the focus in "pretext" cases away from evidence of pretext, St. Mary's makes clear that there is no separate category of pretext cases. What we are left with

is one broad category of disparate treatment cases that, except for the limited category of Price Waterhouse cases, should be treated alike.[14]

## III.

This brings me to the question of causation.  The majority goes to great lengths to show that plaintiffs must prove but-for causation in order to prevail, but the ultimate test it announces neglects all mention of but-for causation. See Typescript at 25-26, Typescript at 29.  Contrary to the majority's intimations, all the justices in Price Waterhouse itself agreed on this point.  I believe that the majority is incorrect when it states that in Price Waterhouse, "Justices Brennan, Marshall, Blackmun, and Stevens read the statute as imposing liability in any situation where the unlawful motive was a 'motivating' factor."  Typescript at 18.  While the Price Waterhouse plurality pointed out that "Hopkins argues that once she made this showing [that the unlawful motive was a motivating factor] she was entitled to a finding that Price Waterhouse had discriminated against her on the basis of sex," it quickly

_____

[14]. In light of Hazen and St. Mary's, I agree with the majority's conclusion that Price Waterhouse cases are "cases not only where the record would support a conclusion that both legitimate and illegitimate factors played a role in the employer's decision, but where the plaintiff's evidence of discrimination is sufficiently 'direct' to shift the burden of proof to the employer on the issue of whether the same decision would have been made in the absence of the discriminatory animus."  Typescript at 26 n.9.

rejected that argument. Price Waterhouse, 490 U.S. at 244 n.10, 109 S.Ct. at 1787 n.10. Justice Brennan really was concerned with burdens and presumptions; his point was that if the defendant could not prove its affirmative defense, the trier of fact could presume that but-for causation had been proven. See id. at 246 n.11, 109 S.Ct. at 1788 n.11 ("[W]here an employer is unable to prove its claim that it would have made the same decision in the absence of discrimination, we are entitled to conclude that gender did make a difference to the outcome.") (plurality opinion); see also id. at 249, 109 S.Ct. at 1790 ("A court that finds for a plaintiff under this standard has effectively concluded that an illegitimate motive was a 'but-for' cause of the employment decision.") (plurality opinion); id. at 281, 109 S.Ct. at 1807 ("The theory of Title VII liability the plurality adopts . . . essentially incorporates the but-for standard.") (Kennedy, J., dissenting). In other words, all the justices always have agreed that a plaintiff cannot win in an age discrimination suit if but-for causation is not proved; the disagreement in Price Waterhouse involves the much different question of who bears the burden of proof and what can be inferred when those burdens are not met. Id. at 281, 109 S.Ct. at 1807 ("The importance of today's decision is not the standard of causation it employs, but its shift to the defendant of the burden of proof.") (Kennedy, J., dissenting).

The in banc majority's belief that "but-for" causation is surrounded in controversy has induced it to shy away from the concept in articulating a jury charge -- even though the majority opinion at one point explicitly recognizes that the Hazen test translates into but-for causation, see Typescript at 21 ("A plaintiff in an ADEA case . . . has the burden of persuading the trier of fact . . . that there is a 'but-for' causal connection between the plaintiff's age and the employer's adverse action . . . ." I believe this unnecessarily complicates matters. Cf. Gehring, 1994 WL 715285 at * 2 ("'determining factor' is not a term in common usage, and it therefore does not illuminate the essential concepts. Putting unusual terms in jury instructions does little beyond confusing the jurors"). Thus, while it is true that in all non-Price Waterhouse cases, the test is whether the "plaintiff [has proven] by a preponderance of the evidence that age played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process," Typescript at 29, the jury also may be instructed that this technically worded test translates into but-for causation. Gehring, 1994 WL 715285 at * 3 ("one attractive formulation" is that the jury should be instructed to decide "whether the employer would have fired [demoted, laid off] the employee if the employee had been younger than 40 and everything else had remained the same") (alteration in original). In Price Waterhouse cases, as defined in note 10 of the in banc majority's

opinion, the jury should be instructed that if the defendant fails to meet its burden of showing that it would have made the same decision in the absence of the illicit motive, it must conclude that the plaintiff has proven but-for causation.