

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-1995

# Wilson v Susquehanna Twnship

Precedential or Non-Precedential:

Docket 94-7528

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Wilson v Susquehanna Twnship" (1995). *1995 Decisions.* Paper 135.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/135

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-7528

_____

JACKIE WILSON,

v.

SUSQUEHANNA TOWNSHIP POLICE DEPARTMENT
and SUSQUEHANNA TOWNSHIP BOARD OF
COMMISSIONERS,

Appellees

JACKIE L. WILSON,
                                    Appellant
_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
D.C. No. 93-cv-778

_____

Argued:  March 10, 1995

Before:  BECKER, SCIRICA and WOOD, Jr.,[*] Circuit Judges

(Filed May 19, 1995)

          IRA H. WEINSTOCK, ESQUIRE
          WENDY DULLEA BOWIE, ESQUIRE  (ARGUED)
     800 North Second Street
          Suite 100
          Harrisburg, PA  17102

          Attorneys for Appellant

          CHRISTINE M. BRENNER, ESQUIRE  (ARGUED)
          Marshall, Dennehey, Warner, Coleman &
Goggin
          1845 Walnut Street
          Philadelphia, PA  19103

_____

[*].  The Honorable Harlington Wood, Jr., United States Circuit
Judge for the Seventh Circuit, sitting by designation.

BRIGID ALFORD, ESQUIRE
LEONARD TINTNER, ESQUIRE
Boswell, Snyder, Tintner & Piccola
315 North Front Street
P.O. Box 741
Harrisburg, PA  17108-0741

Attorneys for Appellees

_____

OPINION OF THE COURT

_____


WOOD, Jr., Circuit Judge.

In a bench trial, the district court found that the plaintiff-appellant, Jackie L. Wilson, had failed to sustain her burden of proof in demonstrating she was discriminated against because of her gender by the defendants-appellees, Susquehanna Township Police Department and Susquehanna Township Board of Commissioners.  Ms. Wilson alleged she was wrongfully denied a new position, title, and job responsibilities in the police department in violation of Title VII of the Civil Rights Act.[1] Ms. Wilson appeals.

In its Memorandum Opinion of August 15, 1994, the district court, in spite of its ruling adverse to Ms. Wilson, expressed amazement at the evidence adduced at trial detailing the sexually charged atmosphere existing in the police

_____

[1]. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq.

department. In their brief, even the appellees concede "that the environment at the Susquehanna Township Police Department was from time to time bawdy and crude." We, too, are appalled that this extremely offensive sexual environment was permitted to exist in any workplace, but particularly in a vital public office. That, however, does not end our analysis.

Ms. Wilson, a civilian employee, was first hired by the police department in 1980 as a clerk typist, and in 1990, was promoted to a secretarial position with a pay increase. In 1991, the police department acquired a new record keeping computer system. Ms. Wilson and Officer Donald Smith each did some of the preliminary work in selecting the particular computer system and in its installation and utilization. An outside computer consultant recommended that a Records System Supervisor position be created to oversee use of this new system. It was known that both Ms. Wilson and Officer Smith were interested in this new position. The choice between them was up to Chief Thomas Bell.

Chief Bell was first employed by the department in 1969 and became chief in 1988. He was the supervisor of both Ms. Wilson and Officer Smith. The problem arises because of Chief Bell's selection of Officer Smith against the background of the sexual environment in the police department and other evidence of gender bias. This is not a situation where Chief Bell did not know about the offensive atmosphere in his department. He, in fact, was part of the problem.

No fault is found with the qualifications of Officer Smith. The record shows he was a college graduate, had taken

computer courses in high school and attended computer seminars. Ms. Wilson had previous experience with computers in the department. She was not a college graduate, but had taken college courses and was pursuing a degree in Integrated Information Systems Management. Ms. Wilson was thoroughly familiar with department record keeping whereas Officer Smith's previous duties had involved traffic safety.

The sexual harassment of women mentioned by the district court is detailed and undisputed in the record. We need only summarize, not detail, that evidence to reveal its extreme offensiveness. Among other things, the evidence showed the circulation on a daily basis of sexually explicit drawings, and the posting of obscene notices, some referring to female employees by name. Sexual conversations with female employees accompanied by leering were common place. A professional x-rated movie was shown, as well as graphic home videos. The female employees were called to the break room by officers to join them in viewing these pornographic films. The Chief talked about the sex life of some of the officers as well as his own, even commenting adversely about his own anatomy. The Chief also made other sexual comments offensive to women, if not also to men. These comments were about the anatomy of female employees and their physiological and sexual differences. Ms. Wilson testified about an indecent assault on her by an officer. When she complained to Chief Bell he laughingly dismissed it. The testimony showed that Chief Bell was fully aware of this pervasive sexual misconduct in the department. There is,

however, other pertinent evidence of gender bias which we will set forth later.

The district court in applying the law to the facts first followed McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and found that plaintiff had shown she was a member of a protected class. She was qualified for the position, but rejected, and a non-member of the class, Officer Smith, was treated more favorably. The district court held that the plaintiff made out a prima facie case of sexual discrimination.

The district court next considered whether defendants had articulated a legitimate non-discriminatory reason for their bypassing of the plaintiff in favor of a non-member of the class, and concluded that they had. The defendants offered three explanations. First, the defendants claimed they wanted a police officer who would most likely remain in the new position for a long period of time. The district court promptly disposed of that reason as not credible, noting Ms. Wilson had been with the department for eleven years and Officer Smith only fifteen months. Second, the defendants claimed that having an officer in charge would better fulfill their responsibility in keeping department records confidential. The district court saw this as a transparent excuse, finding that Ms. Wilson had had access to virtually all department records prior to the installation of the new computer system. The district court also noted that Chief Bell testified that the confidential police information is now entered into the new computer system, not by police officers, but by two civilian employees.

The defendants' final excuse was that a police officer within the police chain of command was preferable to a civilian in the new position because an officer would be more accountable to the Chief of Police. This explanation was found by the district court to be "more credible," which in view of the two other pretextual reasons was not a very high threshold. The district court gave weight to the fact that the discipline of civilian employees is the responsibility of the Township Manager, not the Police Chief, as it is with police officers. Chief Bell wanted control. The court found this to be a legitimate justification, and therefore, not pretextual.

The district court explained that "[o]nce the employer had articulated a legitimate, non-discriminatory reason for the employment action, the plaintiff must demonstrate that the proffered reason is merely a pretext for discrimination." The plaintiff was held not to have met her burden in regard to this one remaining reason.

Next the district court found, citing St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S. Ct. 2742 (1993), and assuming arguendo that even had Ms. Wilson demonstrated all defendants' excuses to be pretextual, she nevertheless failed to carry her burden of persuasion. In making this determination, the district court did not ignore the "inappropriate conduct" in the police department, but concluded that Ms. Wilson had not proven that the offensive conduct had resulted in discriminatory employment actions regarding women. As a basis for this conclusion, the district court credited the fact that three women

police officers had been appointed to special duty assignments, assignments also sought by male officers.  That is not disputed by Ms. Wilson, but those special duty assignments were not supervisory.  It appears that no woman had ever been appointed to a supervisory position by Chief Bell.[2]  Further, at least two of these three special assignments to women were made only after Ms. Wilson's gender complaint had been filed with the Pennsylvania Human Relations Commission.

The district court gave no weight to the uncontroverted comment of Mr. Caughey, the Township Manager, that "if he had to pay a woman what a man makes he wouldn't hire any women." Another woman employee of the township testified she heard the Township Manager say "there would be no woman supervisor if he had anything to do with it."  The district court found that evidence not to be persuasive because the appointment decision was Chief Bell's, not the Township Manager's, and further because of the actual assignment of the three women police officers to special duty.  The Township Manager did not make the appointment technically; Chief Bell did, but as might be expected the record reveals that the Township Manager took an active part in personnel matters and expressed his discriminatory views.  The record, however, does not reveal how much influence the Township Manager had over police personnel, but as Township Manager he

_____

[2]The new position did not involve the supervision of people, only computers, although defendants in their brief make the point that Ms. Wilson had never had a department supervisory position. That is not surprising in view of the evidence concerning the department.

likely had some control, if not technically, at least practically. The Township Manager and Chief Bell were of one mind concerning the appointment of women to supervisory positions. The record shows that when Ms. Wilson pressed Chief Bell for the "real reason" she did not get the promotion, he told her that "Miles [Caughey] wanted a man." In dismissing Caughey's animus as not dispositive of the question of Chief Bell's pretext, the district court apparently did not consider that by offering Caughey's bias as a reason for his (the Chief's) decision, the Chief clearly showed that Ms. Wilson's sex played a role in his decision, again manifesting his own gender bias (amply reflected elsewhere in the record). This analytic omission was most likely a consequence of the court's being locked into the McDonnell Douglas framework.

We have serious doubts about the related finding by the district court that the discipline and control of police officers, rather than of civilian employees, was easier for Chief Bell. It was claimed a civilian could be disciplined only by the Township Manager. There was evidence, however, that Chief Bell was responsible for assigning all Ms. Wilson's duties and that she was accountable only to him. For instance, Chief Bell was the only one who could authorize overtime for Ms. Wilson. Chief Bell had also written Ms. Wilson's prior job descriptions and she received her orders and duty assignments from him. A police lieutenant, however, supervised her vacation time. It does not appear that Ms. Wilson ever gave any cause for disciplinary concern, except when she took her gender complaint to the

Pennsylvania Human Relations Commission. Then at Chief Bell's request directed to Mr. Caughey, the Township Manager, Ms. Wilson was terminated. Conversely, it appears Chief Bell did not have complete disciplinary control over police officers. He could suspend an officer for up to thirty days, but only the Board of Commissioners could demote or terminate a police officer. It is unconvincing that discipline was so vital to Chief Bell in a department where discipline seems to have been so seriously lacking, particularly in an area as important as sexual harassment. Viewing all of this in context, admittedly from the record and not with the benefit of having been the trial judge, we have serious doubts about the finding that this remaining proffered reason was not as pretextual as the others. However, regardless of that finding, clearly erroneous or not, in our view the applicable prevailing law was not applied.

We appreciate that this area of the law has not always been easy to ascertain or to apply. Miller v. Cigna Corp., 47 F.3d 586 (3rd Cir. 1995), an en banc decision, is helpful and instructive. Miller, however, came too late to assist the district judge in the present case. Miller is an Age Discrimination in Employment Act (ADEA) case, not a sex discrimination case, but the Miller court makes clear the obvious relationship between Title VII's prohibited prejudices and the ADEA, which follows Title VII jurisprudence. Id. at 592. Miller then elaborates upon the distinction between pure "pretextual" cases and "mixed motives" cases as enunciated in Price-Waterhouse v. Hopkins, 490 U.S. 228 (1989). Id. at 593-94. In Price-

Waterhouse, it is explained that the familiar rules about the burden of production and persuasion found in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 284 (1981), are not to be applied in all situations.  A distinction is made between "pretextual" cases, like McDonnell Douglas and Burdine, and a "mixed motives" case such as Price-Waterhouse.  The "mixed motives" distinction drawn in Price-Waterhouse and explained in Miller requires the application of different rules:

> The [Price-Waterhouse] Court held that, in cases where the plaintiff offers "direct evidence" of unlawful discrimination and the evidence as a whole permits a conclusion that both permissible and impermissible considerations played a role in the employer's decision, the plaintiff need only show that the unlawful motive was a substantial motivating factor in that decision.  If the finder of fact concludes that the plaintiff has carried this burden, the burden of persuasion shifts to the defendant to prove that the unlawful motive was not a but-for cause, i.e., that the same action would have been taken, because of legitimate considerations, in the absence of the lawful motive.

Miller, 47 F.3d at 594.

The holding in Price-Waterhouse, applicable here, is succinctly summed up by the Supreme Court:

> We hold that when a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.

Price-Waterhouse, 490 U.S. at 258.

In a case, however, which does not qualify for the burden shifting provision of Price-Waterhouse the plaintiff "must prove by a preponderance of the evidence that age [sex] played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process." Miller, 47 F.3d at 598. That is the burden applied by the district court to Ms. Wilson, but her burden in a mixed motives case is not that heavy.

It is of no moment that the plaintiff in the present case was found not to have shown that all the defendants' proffered reasons were in fact pretext. Her burden is not so exclusively defined. The district court citing St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S. Ct. 2742 (1993), put all the burden of persuasion on Ms. Wilson. As Miller points out, however, St. Mary's is a pretextual and not a mixed motives case. Miller, 47 F.3d at 596.

In consideration of all the circumstances, we view this as clearly a mixed motives case based upon the findings of the district court. The record clearly goes beyond "stray remarks" and evinces strong gender bias in the police department, including on the part of Chief Bell. This evidence, which included "conduct or statements by persons involved directly reflecting the discriminatory attitude," Starceski v. Westinghouse Elec. Corp., Nos., 94-3182 & -3208, typescript at 9 (3d Cir. 1995) (internal quotation marks omitted), goes far beyond the weaker inference of improper motive raised by the plaintiff's prima facie case under the pretext framework and

constitutes "direct evidence" of discriminatory animus, see Starceski typescript 9 n.5; Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221, 1225 n.6 (3d Cir. 1994), cert. granted & judgment vac'd for reconsideration on other grounds, 115 S. Ct. 1397 (1995). Based on this evidence, we conclude that Chief Bell's bias was a substantial motivating factor in the promotion decision and meets the first hurdle required by Price-Waterhouse. The district court must, however, further determine whether the evidence showed that Chief Bell would have made the same promotion decision even in the absence of his improper motive; the risk of non-persuasion in that determination would rest with Chief Bell. On this record, the failure to judge this case as a mixed motives case is legal error, and the case must be reversed and remanded for further proceedings in order to apply the Price-Waterhouse standard as further explained in Miller.

REVERSED AND REMANDED.

————————————————