**Jacqueline M. VERNEY, Plaintiff,**

v.

**PENNSYLVANIA TURNPIKE COMMISSION, James J. Dodaro, Howard Yerusalim, Robert A. Brady, James F. Malone, III, John L. Sokol, Jr., S. Michael Palermo, Joseph L. Dirienzo, Samuel L. Carnabucci, Melvin M. Shelton, Walter J. Lawson, Louis R. Martin, Kevin F. Longenbach, Defendants.**

Civ. A. No. 1:CV–95–15.

United States District Court,
M.D. Pennsylvania.

Oct. 26, 1995.

Thomas J. Dempsey, Pittsburgh, PA, for plaintiff Jacqueline M. Verney.

Gabriel L.I. Bevilacqua, Stephen M. Donweber, Cathleen M. Devlin, Saul, Ewing, Remick & Saul, Philadelphia, PA, for defendants Pennsylvania Turnpike Commission, James J. Dodaro, Howard Yerusalim, Robert A. Brady, James F. Malone, III, John L. Sokol, Jr., S. Michael Palermo, Joseph L. Dirienzo, Samuel L. Carnabucci, Melvin M. Shelton, Walter J. Lawson, Louis R. Martin, Kevin F. Longenbach.

Eric R. Green, Kleinbard, Bell & Brecker, Philadelphia, PA, John P. Hickey, Kleinbard, Bell & Brecker, Philadelphia, PA, for Charles Christy.

## MEMORANDUM

CALDWELL, District Judge.

### I. BACKGROUND

This action arises from the Plaintiff's employment with the Pennsylvania Turnpike Commission ("Commission") as its Assistant Counsel.

In 1992, Defendant Kevin Longenbach was selected for promotion to the position of Deputy Chief Counsel. Plaintiff had applied for the position as well. On September 14, 1992, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), charging the Commission with unlawful gender discrimination as a result of her nonpromotion. Thereafter, she received a right-to-sue letter and commenced an action in this court, alleging, *inter alia*, that the Commission violated Title VII of the Civil Rights Act of 1991. On July 1, 1994, during the pendency of that proceeding, Plaintiff was discharged from her employment with the Commission.[1]

Plaintiff instituted this action against the Commission (Count I) and various of its present and former employees (Count II) on January 6, 1995. In Count I, she alleges that the Commission violated section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), by discharging her in retaliation for her complaint to the EEOC concerning the promotion referred to above. In Count II, Plaintiff contends that the individual Defendants violated her due process rights under the Fourteenth Amendment.

Pending before the court are three motions for summary judgment. The first was filed on behalf of Defendants Carnabucci, DiRienzo, Lawson, Longenbach, Palermo, and Shelton ("Carnabucci Defendants").[2] The second

---

1. Summary judgment was granted in favor of the Defendants in that action on January 5, 1995. *See Verney v. Dodaro,* 872 F.Supp. 188 (M.D.Pa. 1995) (Caldwell, J.).

2. Plaintiff does not contest summary judgment in favor of the Carnabucci Defendants. She does, however, argue that the Carnabucci Defendants' claim for attorneys' fees should be denied. We

was filed by Defendants Brady, Dodaro, Malone, Martin, Sokol, and Yerusalim ("individual Defendants"), and the final motion was filed by the Commission.

## II. *LAW AND DISCUSSION*

### A. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment," and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (emphasis in original) (citation omitted). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (internal citations omitted).

### B. *Title VII Claim*

In Count I, Plaintiff contends that she was discharged because she filed a complaint with the EEOC charging the Commission with gender discrimination. Section 704(a) of Title VII provides that

It shall be an unlawful employment practice for an employer to discriminate against any employee ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

Normally, we would first determine whether this is a "mixed motives" case, as set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or a "pretext" case, such as *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3] However, we need not consider that issue because both parties proceed on the theory that this is a pretext case. *See Brewer v. Quaker State Oil Refining Corp.,* 874 F.Supp. 672, 681 (W.D.Pa.1995). Although Plaintiff contends that she has produced direct evidence of discrimination, she has not argued that this action is appropriate for a "mixed motives" analysis. Accordingly, we will, at this time, consider this a pretext case.[4]

We note that in treating this as a pretext case, we are not foreclosing the possibility of a "mixed motives" charge to the jury *if* sufficient direct evidence of discrimination is pro-

---

need not address that issue because the request for attorneys' fees is premature.

**3.** The Third Circuit recently discussed the distinctions between mixed-motive and pretext cases in *Wilson v. Susquehanna Tp. Police Dept.,* 55 F.3d 126 (3d Cir.1995) and *Miller v. Cigna Corp.,* 47 F.3d 586 (3d Cir.1995), setting forth the appropriate standards for each.

**4.** This appears to be, however, a "mixed motives" case. As noted below, while we treat this as a pretext case now, the determination of whether the jury is given a "mixed motives" charge cannot be made until the evidence is heard at trial, notwithstanding the fact that Plaintiff does not argue it here. *See Wilson,* 55 F.3d at 130 (district court erred in not engaging in mixed motives analysis based on the evidence at trial).

duced at trial. In *Armbruster v. Unisys Corp.*, 32 F.3d 768 (3d Cir.1994), the trial court granted summary judgment in favor of the defendants on "mixed motives" and on pretext. The Third Circuit affirmed the "mixed motives" decision, but reversed the pretext. However, the court expressly recognized the possibility of a "mixed motives" charge at trial:

> We do not mean to suggest that an employee must elect to proceed on either a pretext or a *Price Waterhouse* theory at trial. Rather, we think that an employee may present his case under both theories and the district court must then decide whether one or both theories properly apply at some point in the proceedings prior to instructing the jury. While the evidence here presented to us at the summary judgment stage does not trigger the *Price Waterhouse* framework, the evidence presented during trial may.

*Id.* at 781–82 n. 17; *see also Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1098 (3d Cir.1995). Thus, if Plaintiff pursues a "mixed motives" case at trial[5], we will determine, at some point prior to charging the jury, whether she is entitled to a *Price Waterhouse* charge.

■ In a pretext case, a plaintiff claiming retaliatory discharge must first establish a prima facie case of discrimination, by showing that:

> (1) she engaged in a protected activity; (2) she was subsequently subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.

*Barber v. CSX Distribution Services*, 68 F.3d 694, 701 (3d Cir. Oct. 16, 1995) (citation omitted). If there is no direct evidence of a causal link, the Plaintiff "may use circumstantial evidence, including the length of time between when the employer received noticed of the protected activities and the employee's termination." *Walker v. IMS America, Ltd.*, No. 94–4084, 1994 WL 719611, *8 (E.D.Pa. Dec. 22, 1994) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989), *cert. denied*, 493

U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990)).

■ If the plaintiff succeeds in proving a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). If the defendant carries its "relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* (parenthetical in original). In order to establish pretext, and survive summary judgment,

> the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Id.* at 764.

■ We turn then to application of these standards to the facts of the instant case. There is no dispute that Plaintiff meets elements one and two of her prima facie case since she filed an EEOC complaint on September 14, 1992, [Pl.'s Compl. ¶ 20], and was terminated on July 1, 1994. [Pl.'s Compl. ¶ 25]. The Commission, however, contends that there is not a causal link between the filing of Plaintiff's EEOC complaint in 1992 and her termination nearly two years later.

We agree that, in general, a lapse of nearly two years between protected activity and a discharge is insufficient to establish a causal link. However, the facts here, construed in the light most favorable to Plaintiff, could lead a reasonable factfinder to infer a link between the events. First, although the EEOC complaint was filed in 1992, the earlier litigation in this court was pending at the time of Plaintiff's termination, and these facts were known by all parties.

---

5. In this case, it appears that the evidence presented under either a "mixed motives" or pretext theory would be identical. *See Starceski*, 54 F.3d at 1098 n. 8.

Finally, Defendant Brady admitted that one of the factors which led to Plaintiff's discharge was her suit against the Commission for gender discrimination. [R. Brady Dep. at 91]. This significant statement, combined with the circumstances set forth above, may be sufficient for a factfinder to conclude that there was a connection between Plaintiff's termination and her pending lawsuit. We conclude that Plaintiff has established a prima facie retaliatory discharge claim.

■ The burden now shifts to the Commission to "articulate some legitimate, non-discriminatory reason" for its actions. *Fuentes,* 32 F.3d at 763. It contends that Plaintiff was discharged due to an erosion of trust and confidence in her abilities as an attorney, evidenced by her: (1) surreptitious documentation of conversations with Commission employees, as well as at staff meetings; (2) inability to deal with outside counsel; (3) withdrawal from the other members of the legal department at the Commission; and (4) actions that reflected poor judgment, coupled with an unwillingness to take direction or criticism. These reasons, if true, are legitimate grounds for the termination decision. At this point the burden returns to the Plaintiff to establish "by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* (parenthetical in original). As noted, Plaintiff can show pretext by establishing that each of the Commission's proffered reasons are fabricated or by establishing that retaliation was likely the reason for the discharge.

1. Could a factfinder conclude that the reasons advanced by the Commission for Plaintiff's termination were fabricated?

■ The Commission contends that Plaintiff's discharge was the result of a loss of trust and confidence in her functioning as its counsel. It maintains that the loss of trust and confidence arose from numerous interre-

lated instances, each of which led, in some way, to Plaintiff's discharge.

We have reviewed the Commission's proffered reasons for Plaintiff's discharge, as well Plaintiff's attempts to discredit them, and conclude that Plaintiff has not cast sufficient doubt upon *any* of the reasons that would permit a jury to conclude that they were fabricated.[6] Therefore, we must determine whether a jury could conclude it is more likely than not that retaliation was a determinative factor in the Commission's decision to discharge her.

2. Could a jury conclude that retaliation was "more likely than not" the reason for Plaintiff's discharge?

Plaintiff has introduced evidence of three meetings in June of 1994 between various Defendants that involved discussion of Plaintiff's employment. The participants in the meetings included Defendants Martin, Sokol, Yerusalim, Brady, Dodaro, and Malone. At the June 29, 1994 meeting, the Defendants voted to discharge Plaintiff, effective July 1, 1994. The motion to terminate Plaintiff was made by Defendant Robert Brady. [R. Smith Dep. at 43].

This evidence is relevant, Plaintiff contends, because in his deposition, Brady "provided plaintiff with more than a 'smoking gun.' He provided a muzzle flash." [Pl.'s Br. in Opp'n to S.J. at 6]. The following exchange took place during Brady's deposition upon questioning from Plaintiff's counsel:

Q: From whom did you learn anything at that executive session?

A: At that particular time at executive session was brought in front of the Commissioners that the dismissal of Jackie Verney would be discussed and what our feelings were and at that particular time my feeling was that I have lost confidence in an employee on the attorney level representing me and representing the Commis-

---

**6.** Plaintiff has introduced no admissible evidence that could undermine the Commission's stated reasons for her termination. Instead, she repeatedly advances the fallacious argument that if she makes a nonfrivolous denial of the reasons advanced by the Commission to terminate her, it is sufficient to preclude summary judgment. This argument finds no support in the law.

sion and suing, yes, I thought it was proper to dismiss her.

.    .    .    .    .

Q: Did you express your feelings at that executive session, that you had lost confidence and because she had sued you you would agree to dismiss her?

Mr. Bevilacqua: Let's take a break for just a second. I need to consult with Commissioner Brady.

Mr. Dempsey: Why? I don't think that's appropriate.

[R. Brady Dep. at 91–92]. Plaintiff maintains that Brady's consideration of the fact that Plaintiff was suing the Commission is "direct evidence from a member of the Commission that he and his fellow Commissioners were motivated to discharge Mrs. Verney because she had sued them."

■ The Commission does not dispute that Plaintiff's lawsuit was a factor in Brady's loss of confidence in her as attorney for the Commission and its members.[7] Rather, it contends that it was not inappropriate for Brady to lose trust and confidence upon being sued by a member of the staff. In support, the Commission cites numerous cases which purportedly hold that when in-house counsel sues an employer, that suit can be a factor in a subsequent decision to terminate the attorney. We recognize that the factual situation presented here is unique. However, under the Commission's argument, an employer could terminate an employee-counsel, after that person files a gender discrimination suit, without fear of a claim for retaliatory discharge. The cases cited by the Commission do not so provide.

In *Jones v. Flagship Int'l,* 793 F.2d 714 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987), the employer discharged an in-house counsel after she filed a Title VII action against it. The attorney, whose duties included representation of the employer in employment related matters, initiated a claim for retaliatory discharge, on which the district court granted summary judgment in favor of the defendant. On appeal, the Fifth Circuit held that

Jones' action in (1) filing a discrimination suit against Flagship, (2) suggesting that a class action suit would follow, and (3) soliciting or inviting others to sue or join in a suit against the company not only rendered Jones ineffective in the position for which she was employed, but critically harmed Flagship's posture in the defense of discrimination suits brought against the company.

*Id.* at 728. Thus, the court held, as a matter of law, that in certain circumstances an employer can consider an employee's discrimination suit against the employer in making a subsequent decision to terminate that employee.

But, even assuming the holding in *Jones* is appropriate, the facts adduced here are inapposite. In the instant case, there is no evidence that Plaintiff represented the Commission in other discrimination suits, that her continued employment, while prosecuting a suit against the Commission, hampered its position in other suits, or that she attempted to bring other employees into the suit. Rather, the Commission contends that because Plaintiff filed a gender discrimination suit, it is entitled to consider that suit in its loss of confidence in her and her ultimate discharge. That was not the holding of *Jones.*

The other cases cited by the Commission are also not persuasive. Nowhere in those cases did the court hold that an employer was permitted to take an employee's lawsuit against it into account when making a subsequent decision to terminate that employee. Instead, there was, as in *Jones,* additional conduct (other than the filing of a charge with the EEOC) by the employee in response to alleged discrimination, that "so interfere[d] with his performance of his job that it renders him ineffective in the position for which he was employed." *Rosser v. Laborer's Int'l Union,* 616 F.2d 221, 223 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 241, 66 L.Ed.2d 112 (1980) (employee's response to unlawful employment practice was the attempted ouster of her boss); *Jefferies v.*

---

7. Brady later testified that part of the reason he lost confidence in Plaintiff was the fact that she had sued him personally. [R. Brady Dep. at 99–100].

*Harris County Comm. Action Assoc.,* 615 F.2d 1025 (5th Cir.1980) (employee copying and disseminating materials to call attention to unlawful employment practice is not a "protected activity"); *Hochstadt v. Worcester Found. for Experimental Biology,* 545 F.2d 222 (1st Cir.1976) (employee's conduct in opposing employer was hostile and disruptive); *Graham v. Texasgulf,* 662 F.Supp. 1451 (D.Conn.1987), *aff'd,* 842 F.2d 1287 (2d Cir. 1988) (employee's conduct in expressing opposition to her employer was unreasonable).

In each case, the employee's "opposition" was what rendered the employee ineffective for his or her job, and therefore was properly a factor in the employer's decision to discharge. Thus, the courts held that the employee's "opposition" was not protected activity under section 704(a) of Title VII. *See, e.g., Jones,* 793 F.2d at 728; *Rosser,* 616 F.2d at 223; *Jefferies,* 615 F.2d at 1036; *Hochstadt,* 545 F.2d at 232–33. In the present case, however, the only "opposition" that Plaintiff engaged in was the filing of her EEOC complaint and subsequent prosecution of that action in this court. Those activities could not, without more, "so interfere[ ] with [Plaintiff's] performance of [her] job that it renders [her] ineffective in the position for which [she] was employed." *Rosser,* 616 F.2d at 223. The Commission cannot argue in good faith that the filing of an EEOC charge by in-house counsel is not protected activity. Such a determination would remove in-house counsel from the protection afforded by Title VII.

While we do not agree with Plaintiff that Brady's statements are, necessarily, evidence of discriminatory animus by Brady, any other Commission employee, or the Commission itself, a jury might conclude from the statements that retaliation was a determinative cause in the Commission's decision to terminate the Plaintiff. Accordingly, summary judgment must be denied with respect to Count I.

### C. *Section 1983 Claim*

■ In Count II, Plaintiff advances a claim pursuant to 42 U.S.C. § 1983 against numerous present and past employees of the Commission. In order to prevail the Plaintiff must prove that she was deprived of a federal right by someone acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572, 577 (1980). Plaintiff maintains that she possessed both a liberty and a property interest in her employment with the Commission, and that her Fourteenth Amendment procedural due process rights were violated when she was terminated without cause and without a hearing.[8]

#### 1. Liberty Interest

■ In order to state a claim for violation of procedural due process rights arising from a liberty interest, Plaintiff must establish that her employer published or publicly disseminated damaging information about her. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684, 692 (1976). Here, we have already determined that Plaintiff's initial complaint contained no such claim. *Verney v. Dodaro,* 881 F.Supp. 145, 150 n. 6 (M.D.Pa.1995). Rather, it contained only the conclusory allegation of damage to her reputation. On April 17, 1995, Plaintiff filed an amended complaint which also fails to allege the publication of stigmatizing information. Accordingly, Plaintiff has not stated a claim for a procedural due process violation arising from a protected liberty interest.

#### 2. Property Interest

■ The Supreme Court has stated "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). "The existence of a property interest in employment is a question of state law and is determined by the court as a matter of law." *McDonald v. McCarthy,* No. 89–319, 1990

---

8. Plaintiff makes fleeting reference to a substantive due process claim. However, she has not set forth any evidence of how her substantive due process rights were violated.

WL 131393, *3 (E.D.Pa. Sept. 7, 1990), *aff'd*, 932 F.2d 960 (3d Cir.1991) (citations omitted); *see also Bishop*, 426 U.S. at 344, 96 S.Ct. at 2077, 48 L.Ed.2d at 690 ("the sufficiency of the claim to entitlement [to a property interest in employment] must be decided by reference to state law."). The individual Defendants argue that they are entitled to summary judgment on Count II because Plaintiff, as an at-will public employee, does not have a property interest in continued employment with the Commission.

It is undisputed that under Pennsylvania law public employees, such as the Plaintiff, are employees-at-will. *See, e.g., Cooley v. Pennsylvania Housing Finance Agency*, 830 F.2d 469, 471 (3d Cir.1987). Plaintiff contends, however, that the policies, practices, and customs of the Commission established an "implied in fact" contractual relationship between Plaintiff and the Commission.

The outcome of the instant motion is controlled by two decisions of the Pennsylvania Supreme Court, *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960) and *Stumpp v. Stroudsburg Municipal Authority*, 540 Pa. 391, 658 A.2d 333 (1995). In *Scott*, the plaintiff claimed that he was due money under an employment contract with the Philadelphia Parking Authority. The court first held that "[w]ithout more, an appointed employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will." *Scott*, 402 Pa. at 151, 166 A.2d at 280. Next, the court concluded that "[t]enure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis, is, where it exists, a matter of legislative grace." *Id.* at 154, 166 A.2d at 281. "Furthermore, where the legislature has intended that tenure should attach to public employment, it has been very explicit in so stating." *Id.* at 155, 166 A.2d at 281.

The court then examined the legislation that established the Authority, to determine whether it provided the Authority with the power to create tenure by contract. It found that the Authority had power "to *appoint* officers, employees and agents and to fix their compensation, *not* to enter into contracts of employment." *Id.* at 157, 166 A.2d at 282 (emphasis in original). The court held that because no authority existed to permit the Authority to create tenure, the attempted contract in that case was invalid and unenforceable. *Id.*

In *Stumpp*, the plaintiff was employed by Stroudsburg Municipal Authority. Prior to his termination, he received a letter which stated that "if you wish to retain this position until you retire, please advise the Authority Board...." *Stumpp*, 658 A.2d at 334. Stumpp then accepted the position, but was terminated shortly thereafter. After Stumpp filed suit, the Commonwealth Court determined that he "had an 'implied' contract for employment and therefore had a protectable property right." *Id.* The Pennsylvania Supreme Court reversed, holding that

> [a]s an initial matter, the [public agency] simply does not have the power under law to enter into contracts of employment that contract away the right of summary dismissal, since the power to confer tenure must be expressly set forth in the enabling legislation.

*Id.* (citation omitted). Because the legislation creating the Authority contained no such provision, Stumpp had no property right in continued employment. *Id.*

In the instant case, Plaintiff does not dispute the holding of *Stumpp* or *Scott*. Instead, she cites various cases where the court denied summary judgment against an alleged at-will employee based on numerous factors which could have created an implied-in-fact employment contract. However, not a single case cited by the Plaintiff involved a public agency that lacked the authority to enter into employment contracts. Rather, each involved the issue of employment at-will in the context of a private employer/employee relationship. *See, e.g., Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987) (private employer); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (same); *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) (same); *Westinghouse Electric Co. v. Murphy, Inc.*, 425 Pa. 166, 228 A.2d 656 (1967) (same).

In applying the holdings of *Scott* and *Stumpp* to the facts of this case, Defendants argue that the statute which created the Commission, 36 P.S. § 652a *et seq.*, does not grant the Commission the power to contract for a term of employment. Thus, Defendants contend the Commission does not have the power to create an implied in fact contract, and we agree.

The statute provides that the Commission may "employ engineering, traffic, architectural and construction experts and inspectors and attorneys, and such other employees as may be necessary in its judgment, and fix their compensation." 36 P.S. § 652d. We find nothing in this language that could be construed to confer the power to create an employment *contract.*[9] As noted by the court in *Cooley,*

> [b]ecause of the long tradition of at-will public employment, it must be assumed that when the legislature speaks, it does so explicitly, and if, in their wisdom, it chose to grant tenure to the [public] employees, it would have enacted an appropriate provision.

*Cooley,* 830 F.2d at 472. Therefore, even assuming the facts alleged by Plaintiff are true with respect to the Commission's policies and practices, she could not possess a property interest in continued employment with the Commission. Accordingly, the individual Defendants' motion for summary judgment will be granted.[10]

3. Qualified Immunity

██ The individual Defendants also argue that they are entitled to qualified immunity for any actions they took with respect to Plaintiff's discharge.[11] The test for qualified immunity was announced by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800,

102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), where it was held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. Thus, we inquire whether Plaintiff had a clearly established constitutional right, and, if so, was that right was violated? *Giuffre v. Bissell,* 31 F.3d 1241, 1255 (3d Cir.1994).

We have already determined that Plaintiff did not have a "clearly established constitutional right" in employment with the Commission. Because Plaintiff cannot meet the first requirement of *Harlow,* the individual Defendants are shielded from liability under the doctrine of qualified immunity. *See McGrath v. Gillis,* 44 F.3d 567, 572 (7th Cir.1995) (defendants in section 1983 action by at-will employee in State Attorney's Office entitled to qualified immunity because employee did not have property right in continued employment).

We will issue an appropriate Order.[12]

### ORDER

AND NOW, this 26th day of October, 1995, it is ordered that:

1. Defendants Carnabucci, DiRienzo, Lawson, Longenbach, Palermo, and Shelton's motion for summary judgment, on Count II, filed August 15, 1995 is granted, and the Clerk of Court shall enter judgment in their favor.

2. Defendants Brady, Dodaro, Malone, Martin, Sokol, and Yerusalim's motion for summary judgment on Count II, filed Sep-

---

9. In fact, Plaintiff has not advanced an argument that the enabling legislation contains such a grant of power.

10. We need not consider the individual Defendants' additional argument that if the Commission had the power to create an implied contract, it did not do so in this instance.

11. Although we have already determined that summary judgment is appropriate in favor of the individual Defendants, we will address the qualified immunity argument since its outcome is

based on the same conclusion: that Plaintiff did not have a property interest in continued employment with the Commission.

12. The court believes that the issue of damages may be appropriate for bifurcation pursuant to Fed.R.Civ.P. 42(b). Further, we will direct the Plaintiff and the Commission to submit briefs on the subject of what non-equitable damages would be appropriate in the event the jury returns a liability verdict 'in favor of the Plaintiff.

tember 7, 1995, is granted, and the Clerk of Court shall enter judgment in their favor.

3. Defendant Pennsylvania Turnpike Commission's motion for summary judgment on Count I, filed September 15, 1995, is denied.

4. Within five days of the date of this Order, the parties shall submit briefs on the damages recoverable in this action. Said briefs shall not exceed ten (10) pages.