Maureen A. TUMOLO, Individually
and as Executrix of the Estate of
Michael D. Tumolo, Deceased

v.

TRIANGLE PACIFIC CORP.

No. CIV. A. 98–4213.

United States District Court,
E.D. Pennsylvania.

June 9, 1999.

Alan B. Epstein, Jablon, Epstein and Wolf, Philadelphia, PA, for plaintiff.

Andrew B. Clauss, Cozen and O'Connor, Philadelphia, PA, Frederick M. Thurman, Jr., Edward Bograd, Blair, Conaway, Bograd and Martin, Charlotte, NC, for defendant.

## MEMORANDUM

LUDWIG, District Judge.

In this action, plaintiff Maureen A. Tumolo as executrix of the Estate of Michael D. Tumolo, Deceased, sued defendant Triangle Pacific Corporation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 Pa.C.S.A. §§ 951 *et seq.* In August 1996, defendant terminated Michael Tumolo, age 58, after twelve years of employment. His death in November 1997 was unrelated.[1]

Upon jury trial, plaintiff received a verdict of $115,156 in compensatory damages. Defendant's motion for judgment as a matter of law was denied. Tr., May 5, 1999, at 3. Defendant now renews its motion.[2]

This action proceeded as a pretext case using the *McDonnell Douglas* framework and following *Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir.1995). Under these dictates, once plaintiff has put on a prima facie case of discrimination and defendant has proffered a legitimate nondiscriminatory reason for plaintiff's termination, plaintiff may, but is not required to adduce additional evidence of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). "The factfinder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination...." *Id.*, quoted in *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1066 (3d Cir.1996) (emphasis in original).

Defendant does not dispute that plaintiff made out a prima facie case. Its position is that "at no time during trial did Plaintiff offer or elicit *any* evidence upon which a reasonable jury could discredit [defendant's] articulation" of its nondiscriminatory reason for terminating plaintiff. Def. mem., at 4 (emphasis in original). That contention is unfounded.

A plaintiff need only "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence." *Brewer v. Quaker State Oil Re-*

---

1. Plaintiff's claims of hostile work environment, unequal pay, and retaliation were decided for defendant on summary judgment. Order, April 21, 1999. The trial was limited to the age-based termination claim.

2. Upon a Rule 50(b) motion, a jury verdict should be overturned "only if, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury rea-

sonably could find liability." *Fultz v. Dunn*, 165 F.3d 215, 218 (3d Cir.1998) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993)). The focus is "not on whether there is literally no evidence supporting the []successful party, but whether there is evidence upon which a reasonably jury could properly base its verdict." *Villanueva v. Brown*, 103 F.3d 1128, 1133 (3d Cir.1997) (citation omitted).

*fining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995).[3]  Here, defendant's case rested largely on the testimony of its three witnesses.  As plaintiff stressed at trial, none of that testimony was supported by documentation.[4]  The question of liability turned almost exclusively on determinations of testimonial credibility—an issue squarely within the province of the factfinder.  *See Sheridan*, 100 F.3d at 1071–72 ("[A] finding of discrimination is at bottom a determination of intent.  In making that determination, the jury must perform its traditional function of assessing the . . . credibility of the witnesses through observation of both direct testimony and cross-examination at trial. . . .  This is uniquely the role of the factfinder, not the court."); *see also Woodson v. Scott Paper Co.*, 109 F.3d 913, 924 (3d Cir.1997) ("Although none of the pieces of evidence . . ., standing alone, would be sufficient to allow [an] inference [of pretext], the evidence as a whole can be so, particularly when . . . that verdict may have been based in part on

the jurors' evaluation of witness' credibility and demeanor.").  In addition, there was other evidence on which the jury could have based its finding of age discrimination.

Several significant inconsistencies and other weaknesses in defense witnesses' testimony were offered to discredit defendant's proffered nondiscriminatory explanation.  One example: Tumolo was discharged in August 1996 as part of a company-wide reduction in force.[5]  The June 1996 sales charts showed his year-to-date sales volume to be far greater than that of any of the other four salespersons in the Philadelphia district.  Pl. ex. 14.  Charles Engle, president of Tumolo's division, and Wayne Mazzie, district manager for the King of Prussia office, testified as to why those numbers overrepresented Tumolo's achievements.  Tr., May 4, 1999, at 33–41; 95.  However, the jury was entitled to disbelieve that assessment, which was not bolstered by other evidence.[6]

3.  A substantial portion of defendant's brief distinguishes three Third Circuit Court of Appeals cases—*Sempier v. Johnson & Higgins*, 45 F.3d 724 (3d Cir.1995), *Waldron v. SL Indus., Inc.*, 56 F.3d 491 (3d Cir.1995), and *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326 (3d Cir.1995)—which reversed grants of summary judgment for defendant-employers.  This contention, however, misses the mark.  The controlling issue is whether the facts in this case are sufficient for a reasonable jury to find liability—in other words, whether plaintiff so discredited the defendant's proffered legitimate reason for Mr. Tumolo's termination that a jury could reasonably find discrimination.  This inquiry is fact-intensive.  Cases in which the obverse result at the summary judgment stage was disapproved on appeal are not illuminating.

4.  The lack of documentation of Tumolo's purported short-comings may cast doubt as to their existence or as to the extent that they should be credited.  Testimony regarding complaints of Mr. Tumolo's customers, tr., May 4, 1999, at 104–07, Mr. Tumolo's refusal to seek new business, *id.* at 115, and management's criticisms of his performance, tr., May 3, 1999, at 80, tr., May 4, 1999, at 119–21, were not reflected in any phone messages, personnel reports, meeting minutes, calendars, or notations of any kind.

5.  The believability of defendant's case came up in this context as well.  Plaintiff contested defendant's assertion that Tumolo was "laid off" and not terminated, and, according to Engle, "theoretically" could have been recalled.  Tr., May 3, 1999, at 84.  Indeed, Triangle's personnel form stated that he was terminated for "poor performance" and was not eligible for rehire.  Pl. ex. 2.  Engle dismissed that evidence as just a standard form.  Tr., May 3, 1999, at 87.  However, the evidence as to damages portrayed a person who was overwrought by the loss of his job, and there was little doubt that he had been fired.  No objection has been made to the amount of the jury verdict.

6.  Defendant's witnesses cited sales to accounts supposedly not personally obtained by Tumolo, but this conclusory testimony was not corroborated.  Defendant's critical view of Tumolo's performance was further undermined by the fact that six months prior to his termination Tumolo's commission rate was raised, such that at the time of his termination he had the highest salary and commission rate in the Philadelphia district.  Tr., May 3, 1999, at 91;  May 4, 1999, at 90, 64.

According to defense witnesses, the decision to terminate—or "lay off"—Tumolo was set in motion at a meeting in July 1996 attended by Engle, regional vice-president Michael Moynihan, regional manager for Philadelphia Bruce Yudis, district manager of the King of Prussia division Wayne Mazzie, and the company's controller. Tr., May 4, 1999, at 26–27. Engle said, based on his analysis of the June 1996 sales charts, that he realized there were problems with Tumolo's performance. He reviewed those problems with Moynihan and Yudis, who were the ones who selected Tumolo for termination, which occurred a month later. *Id.* at 33–41. Yet, as plaintiff's counsel adduced at trial, during his deposition on January 27, 1999, Engle had testified that the meeting occurred in the spring of 1996—several months earlier than the July date given at trial. Tr., May 4, 1999, at 67–72. This impeachment evidence led to the arguable inference that the date of the meeting had been moved forward and deliberately revised to conform with the June 1996 sales chart that was used to help justify Tumolo's termination.

Compelling testimony bearing on pretext also came from Gerard McGowan, Tumolo's former supervisor at Triangle Pacific, who was called by plaintiff. At the time of trial, McGowan was working as an independent sales representative for Triangle. Tumolo, he said, was "probably the best [salesperson] that ever worked for me." Tr., May 3, 1999, at 98. According to McGowan, that was true even though Tumolo was inept at measuring cabinets and required assistance. *Id.* at 97–98. That glowing view of Tumolo was not shared by new management, which took over at the end of the year preceding Tumolo's discharge. The jury could well have credited McGowan's seemingly unbiased testimony and Tumolo's sales figures over the unreinforced testimony of defendant's executives.

Defendant's witnesses faulted Tumolo's customer service and his not producing new business. At the time of the downsizing, of the five salespersons in Tumolo's district, the three retained were ages 38, 43, 48. The other terminated salesperson was 32. When performance as a business-getter is the issue, age can be a two-edge sword. "Not generating new business may be a serious deficit in a particular business setting, but it is also often associated with the travails of age." Mem., April 22, 1999, at 13 n. 11. Here, defendant presented its executives' views of Tumolo to account for its triage-type decision to terminate him. Those views were challenged as pretextual by plaintiff's countervailing evidence, and the issue was submitted to the jury.

Moreover, there was evidence that defendant knew some sixteen months before Tumolo was terminated that he believed he was the object of discrimination because of his age. In a letter to then vice president of sales of the cabinet division Engle, dated February 7, 1995—the authenticity and receipt of which were not in dispute—Tumolo wrote "[T]hings are beginning to get to me and I actually feel as if I am being discriminated against because of my experience and age." Tr., May 3, 1999, at 89; pl. ex. 16.

Partial summary judgment was granted to defendant on plaintiff's claim of retaliatory discharge based on the letter. By itself, the letter was too remote in time. However, over defendant's objection, the letter was admitted at trial to show that it may have been a pretextual factor in the decision to terminate Tumolo when the company reduced its number of employees. Engle's testimony was that he showed the letter to then president of the cabinet division, John Conklin, and spoke to Tumolo in an effort to resolve his complaints. As explained to counsel, the contents of the letter were received to show defendant's state of mind on the subject of pretext.[7]

---

7. In a footnote in defendant's post-trial brief, it is suggested that the admission of the letter

led to an "impermissible determination" by the jury. Def. mem., at 9 n. 4. Defendant did

802

The issue of whether defendant's legitimate non-discriminatory reason for Tumolo's termination was honest or pretextual was for the jury's determination. The instructions to the jury are unchallenged, and there was ample evidence to support the jury verdict.

## ORDER

AND NOW, this 9th day of June, 1999, defendant Triangle Pacific Corporation's renewed motion for judgment as a matter of law is denied. Fed.R.Civ.P. 50(b).[1]

A memorandum accompanies this order.

not request a limiting instruction at trial. Fed.R.Evid. 105 ("the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly").

1. Under Local Rule 7.1(e), a post-verdict movant is required to request and pay for a transcript of the trial or show cause to be ex-

cused. E.D. Pa. Local Civ. R. 7.1(e). Noncompliance may result in dismissal of the motion. *Id.* Here, defendant does not appear to have taken any steps to satisfy the Rule. Nevertheless, the motion has been considered and decided on the merits, a transcript having been obtained at the court's direction.